IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 2, 2003 Session

## JAMES WILKERSON v. IFEATU EKELEM

**Appeal from the Chancery Court for Williamson County**
**No. 24135     Elmer Davies, Judge**

_____

**No. M2002-00841-COA-R3-CV - Filed March 24, 2004**

_____

This case involves a dispute between a Williamson County property owner who decided to oversee the construction of his own house and the masonry contractor he hired to do the brick work on the project. The brick mason filed suit in the Williamson County Chancery Court claiming the property owner had breached the parties' oral agreement by failing to pay the balance due under the agreement. The property owner responded by claiming it was the brick mason who had breached the contract, accusing the brick mason of failing to finish the work in a professional manner, and charging the brick mason with slander. The trial court found in favor of the brick mason on his breach of contract claim, rejected the property owner's claims, and entered a $29,268.99 judgment in favor of the brick mason. The property owner appealed. We concur with the trial court's finding that the property owner breached the contract and, therefore, affirm the judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

WILLIAM C. KOCH, JR., P.J., M.S., delivered the opinion of the court, in which WILLIAM B. CAIN, J., and JAMES L. WEATHERFORD, SR. J., joined.

Ifeatu Ekelem, College Grove, Tennessee, Pro Se.

William C. Barnes, Jr., Columbia, Tennessee, for the appellee, James Wilkerson.

**OPINION**

**I.**

Dr. Ifeatu Ekelem is a physician specializing in neonatology. In 1994, he decided to build a 4,500 square foot house on his approximately 40-acre property in Williamson County. Rather than hiring an architect and general contractor to assist him in this ambitious project, Dr. Ekelem elected to order the construction plans out of a book and to coordinate and supervise the construction himself.

In the summer of 1995, Dr. Ekelem entered into an oral contract with James Wilkerson, d/b/a Wilkerson Masonry, to do the brick work on the house. The parties agreed that Dr. Ekelem would supply all materials necessary for the job and that Mr. Wilkerson would supply the tools and labor

only. As reflected in the written estimate Mr. Wilkerson provided to Dr. Ekelem, the total price for the work was based on the unit price of $275 for every 1,000 bricks laid plus a flat charge of $14,476 for certain detail work. The number of bricks that would be needed was unknown at the time the parties entered into the agreement.

Mr. Wilkerson started work on the job the second or third week of July 1995. At the beginning, his crew of ten to twelve laborers made rapid progress, and Mr. Wilkerson believed that he would be able to finish the job in a matter of weeks. However, because of repeated delays caused by Dr. Ekelem's failure to secure an adequate supply of materials and because of multiple changes in design demanded by Dr. Ekelem, the brick work ended up taking over six months to complete.

Mr. Wilkerson's crew finished the job on February 12, 1996. On that day, Mr. Wilkerson gave Dr. Ekelem a written invoice showing that the total cost of the work was $33,726[1] and that the balance due was $18,726.[2] Dr. Ekelem refused to pay Mr. Wilkerson the $18,726 due on the contract. Accordingly, Mr. Wilkerson filed a notice of lien against Dr. Ekelem's property which was recorded by the Maury County Register of Deeds on April 4, 1996. The lien was subsequently recorded by the Williamson County Register of Deeds on April 18, 1996. Nevertheless, Dr. Ekelem continued to refuse to pay the balance due Mr. Wilkerson on the masonry contract.

On July 15, 1996, Mr. Wilkerson filed suit against Dr. Ekelem in the Chancery Court for Williamson County for breach of contract seeking damages and enforcement of the lien on the property. On December 11, 1996, Dr. Ekelem filed an answer and counterclaim in which he admitted entering into an oral contract with Mr. Wilkerson to provide the labor and tools for the brick work. In his counterclaim, Dr. Ekelem alleged that Mr. Wilkerson had not completed the project as agreed, that the brick work was deficient in several respects, and that Mr. Wilkerson had slandered him in comments made to other contractors on the project. Dr. Ekelem sought $33,000 in damages for the alleged breach of contract and deficient work and an additional $20,000 in damages on the slander claim. On December 19, 1996, Mr. Wilkerson filed an answer denying the allegations contained in Dr. Ekelem's counterclaim.

After a series of delays, the case proceeded to trial on March 1, 2002. Although Dr. Ekelem had been represented by counsel during part of the pretrial proceedings, he was representing himself pro se by the time of trial.[3] Mr. Wilkerson presented his case through three witnesses and various exhibits. Dr. Ekelem vigorously cross-examined Mr. Wilkerson and his other witnesses and then testified at length in narrative form regarding his version of the events. The parties deferred closing arguments until the conclusion of the testimony in a companion case that was heard immediately thereafter. Following the conclusion of the companion case, the trial court issued a ruling from the

---

[1]Mr. Wilkerson ended up laying 70,000 bricks. Accordingly, based on the unit price of $275 per 1,000 bricks laid, Mr. Wilkerson charged Dr. Ekelem $19,250 for laying the bricks and $14,476 for the detail work. [$19,250 + $14,476 = $33,726].

[2]Dr. Ekelem made $15,000 in progress payments during the project. [$33,726 - $15,000 = $18,726]

[3]The trial court permitted the law firm that first represented Dr. Ekelem to withdraw in February 1998. Nine months later, in November 1998, the trial court permitted Dr. Ekelem's second law firm to withdraw.

bench in favor of Mr. Wilkerson on his breach of contract claim against Dr. Ekelem. The trial court followed up its oral ruling with a written judgment a few weeks later.

In the judgment dated March 22, 2002, the trial court found that Mr. Wilkerson was entitled to a judgment against Dr. Ekelem in the amount requested of $18,726 plus 10% interest from the date of the filing of the complaint. Thus, the total judgment against Dr. Ekelem came to $29,268.99. The trial court also found that Mr. Wilkerson was entitled to a judgment lien against the property enforceable by attachment, levy, and sale of the property. Dr. Ekelem appealed.

## II.
### DR. EKELEM'S BIAS CLAIMS

At the outset, we wish to address Dr. Ekelem's suggestion that the judgment reflects something other than the trial court's best attempt to apply the governing law in a neutral manner to the facts as shown by the evidence adduced at trial. During oral argument, Dr. Ekelem made much of the fact that he had chosen to represent himself at trial and intimated that the trial court's judgment resulted from some sort of bias against pro se litigants. We find no merit in this claim.

We have consistently held that parties who decide to represent themselves are entitled to fair and equal treatment by the courts, *see, e.g., Whitaker v. Whirlpool Corp.*, 32 S.W.3d 222, 227 (Tenn. Ct. App. 2000); *Paehler v. Union Planters Nat'l Bank, Inc.*, 971 S.W.2d 393, 396 (Tenn. Ct. App. 1997), and that trial courts must take into account that many pro se litigants have no legal training and little familiarity with the judicial system, *Irvin v. City of Clarksville*, 767 S.W.2d 649, 652 (Tenn. Ct. App. 1988). That having been said, we must also be mindful of the boundary between fairness to a pro se litigant and unfairness to the pro se litigant's adversary. Pro se litigants should not be permitted to shift the burden of litigating their cases to the courts or to their adversaries. Thus, trial courts should not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe. *Edmundson v. Pratt*, 945 S.W.2d 754, 755 (Tenn. Ct. App. 1996); *Kaylor v. Bradley*, 912 S.W.2d 728, 733 n.4 (Tenn. Ct. App. 1995).

After conducting an independent review of the record on appeal, we are convinced that the trial court's judgment did not result from some hidden bias on the part of the trial judge against pro se litigants. It is clear from the record that the trial court was exceedingly solicitous in its treatment of Dr. Ekelem in this case precisely because he was acting pro se. During the course of the trial, counsel for Mr. Wilkerson repeatedly raised legally sound objections to conduct and testimony of Dr. Ekelem that were nevertheless overruled by the trial court. The trial judge afforded Dr. Ekelem the broadest possible leeway in his cross-examination of the witnesses, at times allowing Dr. Ekelem to ask the same question, which had already been answered, two, three, four, or more times. The trial court reined in Dr. Ekelem only when he strayed far, far beyond testimony and conduct that would be tolerated in a case where a party was represented by counsel. In short, it is abundantly clear from the record on appeal that the trial court in no way impeded Dr. Ekelem's ability to present his case at trial because he was acting pro se.

Dr. Ekelem also suggested at oral argument that the trial court's judgment was the result of bias against him because he is a physician and because of his race. Dr. Ekelem has pointed to nothing in the record tending to show any such bias on the part of the trial court, and our own independent review of the record on appeal has found none.[4] Accordingly, inasmuch as Dr. Ekelem has challenged the trial court's judgment in this case on the basis of alleged bias on the part of the trial judge, we reject Dr. Ekelem's claim.

## III.
### THE APPLICATION OF THE DAMAGE LIMITATION PROVISION IN TENN. CODE ANN. § 62-6-103(b) (SUPP. 2003) TO MR. WILKERSON'S CLAIM

When the parties entered into their contract in 1995, contractors who did not possess a required contractor's license were barred from filing breach of contract claims against property owners. Tenn. Code Ann. § 62-6-103(b) limited unlicensed contractors to recovery of their "actual documented expenses only." Dr. Ekelem asserts that the trial court should have dismissed Mr. Wilkerson's breach of contract claim because he was not properly licensed in 1995. Mr. Wilkerson responds by claiming that he was not required to be licensed for this project, first, because he was a subcontractor, and second, because Dr. Ekelem failed to prove that the cost of the work under the parties' original agreement exceeded $25,000. While we have determined that Mr. Wilkerson was not a subcontractor on this project, we have concluded that Dr. Ekelem failed to prove that the cost of the work when the parties entered into their contract exceeded $25,000. Therefore, Tenn. Code Ann. § 62-6-103(b) does not bar Mr. Wilkerson's breach of contract claim.

### A.

Mr. Wilkerson's invocation of the exemption from licensure for subcontractors in Tenn. Code Ann. § 62-6-102(3)(D)(iii) (Supp. 2003) is misplaced for two reasons. First, as a factual matter, Mr. Wilkerson was not a subcontractor with regard to the work he performed for Dr. Ekelem. Second, the specific statutory exemption from licensure for subcontractors on which Mr. Wilkerson relies did not exist in the summer of 1995 when Dr. Ekelem and Mr. Wilkerson entered into their agreement regarding the brick work for Dr. Ekelem's house.

In reference to the first point, the Contractors Licensing Act of 1994 does not define the terms "subcontract" or "subcontractor." However, this court has previously defined "subcontractor" in the construction context as "a person who has a contract with the general or prime contractor to perform a portion of the work that the general or prime contractor has already contracted with the owner to

---

[4]Indeed, the only person who appears to have attempted to make race and related matters an issue at trial is Dr. Ekelem. Dr. Ekelem felt it necessary to inform both the trial court and this court that Mr. Wilkerson's crew of ten to twelve laborers consisted of individuals of Hispanic descent. Dr. Ekelem repeatedly referred to Mr. Wilkerson's laborers as "Mexicans" and "Hispanics," even after it was pointed out by counsel for Mr. Wilkerson that the ethnicity and national origin of Mr. Wilkerson's laborers was completely irrelevant to anything at issue in this case.

perform." *Winter v. Smith*, 914 S.W.2d 527, 539 (Tenn. Ct. App. 1995).[5] This definition of "subcontractor" requires the existence of at least two contracts – one between an owner and the general or prime contractor and another between the general or prime contractor and the subcontractor. In this case, there was no contract between the owner and the general or prime contractor because the owner was the general contractor. An individual who contracts directly with the owner of the property is not a "subcontractor" even if the owner holds himself or herself out as, and performs the duties of, a general contractor. *Winter v. Smith*, 914 S.W.2d at 539-40. Thus, under the facts of this case, Mr. Wilkerson was not a "subcontractor" because he contracted directly with Dr. Ekelem, the owner of the property.

With regard to the second point, a contractor's obligation to have a license depends on the law existing when the contractor offers or contracts to perform the work. Prior to 1994, the Tennessee General Assembly had exempted most subcontractors from the statutory licensing requirement.[6] However, the Contractors Licensing Act of 1994 did not include a specific licensing exemption for any type of subcontractor. That exemption, now codified at Tenn. Code Ann. § 62-6-102(3)(D)(iii), was not added to the Contractors Licensing Act of 1994 until 1999.[7] Thus, from 1994 until 1999, subcontractors whose work cost $25,000 or more were required to be licensed. It, therefore, follows that Mr. Wilkerson could not invoke the specific exemption for subcontractors in Tenn. Code Ann. § 62-6-102(3)(D)(iii) even if he had been a subcontractor on Dr. Ekelem's house, because the exemption did not exist in 1995 when the parties made their oral contract.

**B.**

Our determination that Mr. Wilkerson was not exempt from the licensing requirements of the Contractors Licensing Act of 1994 as they existed in 1995 does not resolve the question of whether the trial court erred by awarding Mr. Wilkerson damages on his breach of contract claim. Dr. Ekelem, as the party raising the affirmative defense based on Tenn. Code Ann. § 62-6-103(b), had the burden of proving that Mr. Wilkerson was required to have a contractor's license for this project. Dr. Ekelem has failed to carry this burden.

By its own terms, the Contractors Licensing Act of 1994, as it existed in 1995, required contractors to have a license only when the total cost of the work they contracted to perform equaled or exceeded $25,000. The time for determining whether a particular contract meets or exceeds the

---

[5]*See also* Tenn. Code Ann. § 62-37-103(11) (1997) defining "subcontractor" under the Home Improvement Licensing Act as "any person other than a materialman or laborer who enters into a contract with a contractor for the performance of any part of the contractor's contract, or who enters into a contract with any subcontractor for the performance of any part of the subcontractor's contract, and who does not perform work other than as a subcontractor."

[6]From 1931 until 1976, the Tennessee General Assembly excluded all subcontractors from the licensing statutes. In 1976, the General Assembly decided to subject some subcontractors – electrical, plumbing, and heating, ventilating and air conditioning subcontractors – to the licensing requirements. *Winter v. Smith*, 914 S.W.2d at 536. For a brief period of time not at issue in this case, the General Assembly extended the licensing requirements to masonry subcontractors. *Winter v. Smith*, 914 S.W.2d at 537 n.16.

[7]Act of May 27, 1999, ch. 245, § 1, 1999 Tenn. Pub. Acts 561, 561.

$25,000 limit is when the parties enter into the contract, not when the contract is completed. *H & S Excavating v. Walker*, No. M2001-02619-COA-R3-CV, 2003 WL 237411, at \*7 (Tenn. Ct. App. Feb. 4, 2003) (No Tenn. R. App. P. 11 application filed) ("[I]t only makes sense to determine whether a person or entity needs a license at the outset rather than the end of a project."). Thus, the critical issue on appeal is whether Dr. Ekelem presented sufficient evidence at trial to establish that the parties' contract totaled $25,000 or more at the time they entered into it.

Dr. Ekelem failed to present sufficient evidence at trial to support his claim that the contract entered into by the parties was one for $25,000 or more from the time of its inception. The written estimate Mr. Wilkerson provided Dr. Ekelem at the beginning of the project was not for a sum certain. It quoted $14,476 for the detail work and then a unit price of $275 per 1,000 bricks laid. Thus, the total contract price would have exceeded $25,000 only if the project ended up requiring more than 38,000 bricks to complete.

Even though Mr. Wilkerson ultimately used 70,000 bricks on the project, we will not impute to him the knowledge at the time the parties entered into their contract that the job would require more than 38,000 bricks. He testified, without contradiction, that he had no idea how many bricks would ultimately be required for the project because estimating the number of bricks required for the job is the responsibility of the general contractor and brick supplier. Mr. Wilkerson also testified that he had installed bricks for other similarly sized homes and that he had never used more than 25,000 bricks for these projects. Accordingly, Mr. Wilkerson could appropriately have assumed at the outset that the total cost of his work for Dr. Ekelem would not exceed $25,000.[8]

Dr. Ekelem failed to present any evidence at trial to suggest that either of the parties knew, at the time they entered into their agreement, that the number of bricks required for the project would be so great that it would push the total contract price above the critical $25,000 figure. It is equally plausible that Dr. Ekelem's many changes in the work caused the increase in the number of bricks. Accordingly, we find that Dr. Ekelem failed to carry the burden of proof on his affirmative defense, and the trial court properly rejected it in awarding judgment to Mr. Wilkerson.[9]

---

[8]Mr. Wilkerson testified that he had done the brick work for Zaring Homes on several projects involving 3,500 square foot houses and that he had used at most 25,000 bricks on these houses. Even accounting for the difference in the size of Dr. Ekelem's house, Mr. Wilkerson could easily have concluded that Dr. Ekelem's house would have required 32,000 to 33,000 bricks. Thus, he could easily have anticipated that the total cost of the work he contracted to perform for Dr. Ekelem was approximately $23,500. [$14,476 for the detail work + $9,075 for the brick work = $23,551].

[9]It may be that Dr. Ekelem, not being an attorney, failed to comprehend that he bore the burden of proving all the essential elements of his defense, including the parties' awareness at the time of agreement that the total contract price would meet or exceed $25,000. In any event, the trial court's conclusion that Dr. Ekelem failed to establish his defense to Mr. Wilkerson's breach of contract claim based on the contract price was correct.

# IV.
## THE RELATIONSHIP BETWEEN THE LIEN LAWS AND MR. WILKERSON'S
## BREACH OF CONTRACT CLAIM

Dr. Ekelem also asserts that the trial court should have dismissed Mr. Wilkerson's breach of contract claim because Mr. Wilkerson failed to record a lien against his property within ninety days after leaving the job site. This argument is without merit for two reasons. First, Dr. Ekelem is factually mistaken. The evidence demonstrates that Mr. Wilkerson filed his lien within ninety days after completing his work. Second, the time frame within which Mr. Wilkerson filed his lien has no impact whatsoever on this breach of contract claim.

Mr. Wilkerson's crew completed their work on February 12, 1996. After Dr. Ekelem declined to pay him, Mr. Wilkerson filed a lien against Dr. Ekelem's property with the Maury County Register of Deeds on April 4, 1996. Two weeks later, on April 18, 1996, he filed the lien against Dr. Ekelem's property with the Williamson County Register of Deeds. The lien filed on April 18, 1996 was clearly filed within ninety days after the completion of the brick work. Accordingly. Dr. Ekelem's argument lacks any basis in fact.

In addition, the circumstances regarding the filing of Mr. Wilkerson's lien have no impact on his right to sue Dr. Ekelem for breach of contract. Dr. Ekelem has pointed us to no legal authority – nor has our own independent research uncovered any – suggesting that a contractor is required to file a lien against the property as a prerequisite to filing a claim against an owner or general contractor for breach of contract. The statute of limitations for filing claims for breach of contract is six years. Tenn. Code Ann. § 28-3-109(a)(3) (2000). Mr. Wilkerson filed his complaint for breach of contract against Dr. Ekelem on July 15, 1996, long before the expiration of the six-year statute of limitations. Accordingly, Dr. Ekelem's argument on this point also lacks any basis in law.

# V.
## THE EVIDENTIARY SUPPORT OF THE JUDGMENT

As a final matter, Dr. Ekelem asserts that the trial court erred by accepting Mr. Wilkerson's testimony that the parties agreed on a unit price for the installation of the bricks of $275 per 1,000 bricks.[10] He also asserts that the trial court erred by crediting the testimony of Mr. Wilkerson's witnesses that Mr. Wilkerson completed the brick work in a professionally acceptable manner. We find both claims to be without merit.

Tenn. R. App. P. 13(d) provides the standards for reviewing a trial court's factual findings in a non-jury trial. We review these findings de novo but with a presumption that they are correct, *Fell v. Rambo*, 36 S.W.3d 837, 846 (Tenn. Ct. App. 2000), and we will reverse the trial court's findings only if we conclude, based on our own independent review of the record on appeal, that the evidence preponderates against them. *In re Estate of Walton*, 950 S.W.2d 956, 959-60 (Tenn. 1997); *B & G Constr., Inc. v. Polk*, 37 S.W.3d 462, 465 (Tenn. Ct. App. 2000). We will also accord great

---

[10]Dr. Ekelem testified that the agreed upon unit price for laying the brick was $100 per 1,000 bricks.

weight to findings that are based on a trial court's determination of the witnesses' credibility because it was the trial court, not this court, who observed the witnesses and had an opportunity to assess their credibility. *In re Estate of Walton*, 950 S.W.2d at 959; *Fell v. Rambo*, 36 S.W.3d at 846.

After conducting an independent review of the testimony and the exhibits presented at trial, we are persuaded that the evidence, far from undermining the trial court's factual findings, instead strongly supports them. Accordingly, we reject Dr. Ekelem's challenges to the trial court's factual findings regarding the agreed upon unit price for installing the brick and the quality and completeness of Mr. Wilkerson's work.

## VI.

We affirm the judgment and remand the case to the trial court for whatever further proceedings may be required. We tax the costs of the appeal to Ifeatu Ekelem for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., P.J., M.S.