September 2, 1997

FOR PUBLICATION

IN THE SUPREME COURT OF TENNESSEE

AT NASHVILLE

**FILED**

**September 2, 1997**

**Cecil W. Crowson
Appellate Court Clerk**

IN RE:  ESTATE OF CARLTON ELLIOTT      (
WALTON, DECEASED, JEFFREY O.            (
WALTON, ADMINISTRATOR,                  (
                                        (
          Plaintiff-Appellant,          (
                                        (
                                        (  Davidson Probate
                                        (
v.                                      (  Hon. Frank G. Clement, Jr.,
                                        (  Judge
                                        (
                                        (  No. 01S01-9612-PB-00252
LESLIE YOUNG,                           (
                                        (
          Defendant-Appellee.           (

For Plaintiff-Appellant:                For Defendant-Appellee:

Jimmy A. Duncan                         Jack Green
Nashville                               Nashville

Dan R. Alexander
Nashville

**O P I N I O N**

JUDGMENT OF COURT OF APPEALS
REVERSED; JUDGMENT OF TRIAL COURT
AFFIRMED; CASE REMANDED.                          Reid, J.

This case presents for review the decision of the Court of Appeals reversing the trial court's denial of a claim of paternity. For the reasons set forth, the decision of the Court of Appeals is reversed and the case is remanded.

**I**

The decedent, Carlton E. Walton, died intestate. The decedent's son, Jeffrey O. Walton, qualified as the administrator of the decedent's estate. The petition filed in probate court states that Jeffrey O. Walton is the only child of the decedent.

Leslie Young, nee, Jackson, the claimant against the estate, filed a petition in the probate court alleging that she is the natural or biological child of the decedent, and, therefore, entitled to inherit from him according to the law of intestate succession.

The case was heard by the trial judge without a jury. The proof shows that when Young was born on May 9, 1972 her mother, Donna Fowler, had been married to Frank Jackson, Jr. for more than three years. The certificate of birth lists Jackson as the father. Fowler and Jackson were divorced in March of 1973, remarried in November of l973, and divorced again in 1984. In addition, Fowler filed another complaint for divorce which was dismissed. In all of the divorce proceedings and proof, the parties asserted that Jackson was the father of the claimant. In the last divorce case, Jackson was awarded custody of the claimant and she lived with him until she was 16 years old.

According to Young's testimony, Fowler told her when she was 13 that Jackson was not her father, but Fowler did not tell her the decedent was her father until she was 18. Fowler testified that when she first learned that she was pregnant, she informed Jackson and told him the decedent was the father. She also confirmed Young's testimony regarding her conversations with Young when she was 13 and 18. Fowler testified that she continued to have sexual relations with the decedent intermittently until his death. According to Jackson's testimony, he told Young when she was 13 that the decedent was her father.

When Young was about 18, she sought out the decedent and they developed a relationship. The evidence regarding the nature of their relationship is not altogether consistent. Young lived with the decedent for short periods of time for several years before his death and during that time the decedent assisted Young financially.

According to an expert witness, blood tests of Young, Fowler, and Jackson show conclusively that Jackson is not Young's biological father.

The trial court found that Young failed to prove by clear and convincing evidence that the decedent was her biological father and dismissed her petition. The Court of Appeals, in its de novo consideration of the evidence, found that the decedent was the biological father of the claimant.

**II**

-3-

**A**

The claimant relies upon Tenn. Code Ann. § 31-2-105(a)(2)(B) as authority for her assertion of a right to intestate succession. The pertinent provisions of that section are:

> If, for purposes of intestate succession, a relationship of parent and child must be established to determine succession by, through, or from a person: ... a person born out of wedlock is a child of the mother. That person is also a child of the father, if: ... The paternity is established by an adjudication before the death of the father or is established thereafter by clear and convincing proof, . . . .

Tenn. Code Ann. § 31-2-105(a)(2)(B) (Supp. 1996).

This Court recently reviewed the procedure for asserting rights of inheritance pursuant to Tenn. Code Ann. § 31-2-105 in Bilbrey v. Smithers, 937 S.W.2d 803 (Tenn. 1996); see also Allen v. Harvey, 568 S.W.2d 829 (Tenn. 1978). Although not raised in the trial court nor noted by the Court of Appeals, there is one important factual difference between Bilbrey and Allen and the instant case. In the prior cases, the mother of the person claiming paternity was not married when the child was conceived or born. In the instant case, the claimant's mother was married at the time the claimant was conceived and born. The issue of paternity cannot be considered until there has been a determination that the claimant was "born out of wedlock" within the meaning of Tenn. Code Ann. § 31-2-105. Whether a child whose mother was married at the time of the child's birth is a child "born out of wedlock," and therefore has standing to assert a claim of inheritance, has not been decided by this Court.

-4-

In view of the Court's finding that the proof fails to establish her claim, that issue need not be considered in this case.[1]

**B**

The only issue considered in the trial court and in the Court of Appeals, and the only issue presented by the parties on this appeal, is whether the claimant established paternity by clear and convincing proof. As previously stated, this Court finds that the claimant failed to carry her burden of proof.

The proof shows that claimant Young is not the biological child of Jackson, who was married to her mother at the time she was conceived and born. Of course, that proof does not establish the identity of the claimant's father.

On every significant issue the evidence is equivocal. Fowler testified that Young was conceived while she and Jackson were separated, and Jackson in his testimony confirmed that the child was

---

[1]Contrary to the statement by the Court of Appeals in In Re Estate of Armstrong (Adams v. Manis), 859 S.W.2d 323, 327 (Tenn. App. 1993)), Tenn. Code Ann. § 31-2-105 does not define "a person born out of wedlock." Relevant to the issue in Armstrong and the instant case, the statute provides: "A person born out wedlock is . . . a child of the father, if . . . The paternity is established . . . [after] the death of the father . . . by clear and convincing proof." See 41 Am. Jur. 2d, Illegitimate Children § 28 (1995):

> In many jurisdictions, where the legitimacy or illegitimacy of a child born in wedlock is in issue, neither the husband nor the wife may testify to non-access between them, unless it is otherwise provided by statute. In some jurisdictions, the inhibition is not confined to testimony of non-access, but prevents any testimony of the husband or the wife tending to illegitimatize the issue of their marriage.
>
> Other jurisdictions, however, admit testimony of non-access from any knowledgeable witness, including the spouses themselves.

Id. at 223.

not his.  Fowler also testified that she and the decedent were having sexual relations regularly during the time the child was conceived.  However, Fowler's testimony does not foreclose the possibility that another person was the father.

The proof shows that the decedent referred to Young as his "young'n," which apparently is a colloquial expression for "young one."  However, the proof also shows that the decedent had, in the best light, a fatherly penchant for young women and that he had similar relationships with at least three other young women.  Those relationships included living together, providing financial assistance, and referring to each as his "young'n."

The evidence that the decedent acknowledged Young as his child is conflicting.  The testimony of several casual acquaintances indicated that the decedent referred to Young as his child; however, the decedent's sister and a long time lover/friend both testified that they never heard him say Young was his child.

Obviously, the critical evidence is the testimony of Fowler.  Based on this record, neither Young nor Jackson know the identity of Young's father, nor did the decedent.  Fowler was the source of their information; consequently, the probative value of the testimony of Young and Jackson, as well as that of Fowler, depends upon Fowler's credibility.  The evidence as it relates to this determinative issue was summarized by the trial court:

> What is for me to determine today is whether or
> not [Young] has established by clear and
> convincing evidence that the decedent Carl Walton

> was her father. ... I cannot overlook the fact that the mother [Fowler] made representations for years in more than one lawsuit that [Jackson] was the father and, in essence, required or had the ability to require that Mr. Jackson financially support and raise [Young], but now that that financial obligation is gone she does a hundred and eighty degree reversal and claims that Mr. Walton was the father.
>
> . . . [T]he only evidence that's been introduced through [Fowler] .... Yet her credibility has been impeached because she has been shown to have sworn under oath to the contrary. Several witnesses testify that the decedent Carl Walton claimed that [Young] was his daughter and that [Young's] son was his grandson. Others have taken issue with that and claimed that what he was really saying was that she was his young'n and/or that he called lots of young people his young'n and/or that he stated, well, she's -- I'm not saying she's my daughter, I'm saying that her mother says she's my daughter.
>
> . . . I am of the impression that the sole basis upon which Mr. Walton believed, if he did believe, that he was the father was based upon a representation by Ms. Fowler and since her credibility has been challenged and she has been shown to have testified falsely in other matters, I can only determine that the petitioner has failed to convince this Court by clear and convincing evidence that the decedent was her biological father and therefore the petition is denied.

The standard for reviewing the trial court's decision is de novo accompanied by a presumption of correctness, giving great weight to the trial court's determinations of credibility. "Unless otherwise required by statute, review of findings of fact by the trial court in civil actions shall be de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d). As stated in Randolph v. Randolph, 937 S.W.2d 815, 819 (Tenn. 1996),

> We review the findings of fact by the trial court de novo upon the record of the trial court, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d). Because the trial judge is in a better position to weigh and evaluate the credibility of the witnesses who testify orally, we give great weight to the trial judge's findings on issues involving credibility of witnesses. Gillock v. Board of Professional Responsibility, 656 S.W.2d 365, 367 (Tenn. 1983).

See also Wright v. City of Knoxville, 898 S.W.2d 177, 181 (Tenn. 1995)("Because this case was tried without a jury, our review of the issues of fact is de novo on the record of the trial court. However, we must presume that the trial court's findings were correct unless the preponderance of the evidence is otherwise.").

The record supports the trial court's determination that the claimant's evidence does not reach the standard of clear and convincing.

> The "clear and convincing" standard falls somewhere between the "preponderance of the evidence" in civil cases and the "beyond a reasonable doubt" standard in criminal proceedings. To be "clear and convincing," the evidence must "produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established." Hobson v. Eaton, 399 F.2d 781, 784 n. 2 (6th Cir. 1968), cert. denied, 394 U.S. 928 (1969). "Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n. 3 (Tenn. 1992). See e.g. In re Estate of Armstrong, 859 S.W.2d 323, 328 (Tenn. App. 1993).

Fruge v. Doe, ___ S.W.2d ___, ___ n.2 (Tenn. 1997).

The evidence does not preponderate against the trial court's finding that the claimant failed to prove paternity by clear and convincing evidence.

The judgment of the Court of Appeals is reversed, the judgment of the trial court is affirmed, and the case is remanded to the trial court.

Costs are taxed against the appellee, Leslie Young.


_____
Reid, J.


Concur:

Anderson, C.J., Drowota, Birch,
  and Holder, JJ.