IN THE COURT OF APPEALS OF TENNESSEE
AT MEMPHIS
January 23, 2008 Session

## ARTHUR KAHN, ET AL. v. PAUL J. PENCZNER, ET AL.

**Direct Appeal from the Circuit Court for Shelby County**
**No. CT-004617-04     John R. McCarroll, Jr., Judge**

_____

**No. W2006-02527-COA-R3-CV  -  Filed July 24, 2008**

_____

Lessees/Appellants filed suit against Lessors/Appellees for breach of a commercial lease after Lessors/Appellees refused to approve Lessees/Appellants' proposed subtenants. The trial court found that Lessors/Appellees had failed to fully mitigate damages, and granted Lessor/Appellees only 50% of rents as damages, along with damages for taxes and insurance. Lessees/Appellants appeal the trial court's award of rents, and the judgment for taxes and insurance. Lessors/Appellees raise additional issues concerning the trial court's award of only a portion of its claimed attorneys fees, and the judgment based upon damage to the demised Building by Lessees/Appellants. Finding no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which ALAN E. HIGHERS, P.J., W.S., joined. W. FRANK CRAWFORD, J., did not participate.

Glen Reid, Jr., Hal Gerber, and Douglas Black, Memphis, Tennessee, for the appellants, Arthur Kahn, Louis Loeb, Larry Bloch and Peggy E. Burch.

William H. Fisher, III and Valerie Fisher, Memphis, Tennessee, for the appellees, Paul J. Penczner and Jolanda Penczner.

### OPINION

This action arises from a dispute over a commercial lease (the "Lease") of a two-story building at 964 June Road in Memphis (the "Building"). Arthur Kahn, Louis Loeb, and Larry Bloch are the partners who comprise the Tennessee general partnership known as Cellermasters, d/b/a Arthur's Wine & Liquor ( together with Peggy Burch, Arthur Kahn's ex-wife and signatory to the Lease, "Arthur's," "Lessee," or "Appellant"). Paul J. Penczner and Jolanda Penczner (together, the "Penczners," "Lessor," or "Appellee") are the owners of the Building.

The business relationship between these parties began in 1985 when Arthur's entered into the Lease with the Penczners. The original lease term began on April 1, 1985 and ran for a period of six years. Over time, the parties negotiated three extensions of the Lease, the last of which expired on March 31, 2006. From the beginning of its occupancy, Arthur's occupied only the first floor of the two-story building.

In 2003, Arthur's desired to relocate to a newly-constructed building, which directly fronted Poplar Avenue. In December 2003, Arthur's notified the Penczners of its intention to relocate in the spring of 2004, and to sublet all or part of the Building for the balance of the Lease term. To that end, Arthur's hired a realtor and sought the Penczners cooperation in marketing the Building to prospective tenants. Ultimately, Arthur's presented two prospective tenants, both of whom the Penczners rejected.

On August 10, 2004, Arthur's filed a "Complaint for Breach of Contract, Fraudulent Misrepresentation, and Damages" (the "Complaint") against the Penczners.[1] In its Complaint, Arthur's specifically avers that the Penczners "arbitrarily and unreasonably rejected" the prospective tenants in violation of the Lease. Consequently, Arthur's contends that the Penczners "violated their duty of fair dealing and acting in good faith."[2] In its prayer for relief, Arthur's asks the court, *inter alia*, to declare the Lease null and void effective August 15, 2004, for damages including its real estate agent's fees, and for attorney's fees.

On April 22, 2005, the Penczners filed their answer, in which they deny the material allegations of the Complaint. Concurrently with their answer, the Penczners filed a counter-complaint, asserting that Arthur's had failed to comply with Paragraph 13 of the Lease by not supplying the required information on the proposed subtenants. The Penczners further contend that, based upon the information that they did receive, the prospective tenants were not financially sound, or were otherwise undesirable for the space. In their counter-complaint, the Penczners assert, *inter alia*, that Arthur's remains liable for all obligations under the original Lease, that the Penczners had taken steps to mitigate their damages (i.e., they took possession of the building, and retained a real estate agent in order to find a suitable subtenant). The Penczners further contend that Arthur's is obligated to pay the "annual realty taxes and hazard insurance premiums" on the Building, and that they had failed to make such payments in breach of the Lease. The Penczners also claim that Arthur's damaged the demised premises when it abandoned same.

The matter was tried to the court, sitting without a jury. On October 2, 2006, the trial court entered its Final Judgment, which reads, in pertinent part, as follows:

---

[1] The original Complaint was brought by Plaintiff Arthur Kahn only. However, the Complaint was later amended to add the additional Plaintiffs set out above.

[2] Arthur's claim for fraudulent misrepresentation was voluntarily non-suited by Order of April 6, 2006.

[T]he Court found that the Penczners were entitled to recover from the Plaintiffs the following expenses incurred by them in satisfying the Plaintiffs' obligations under the lease:

> $740.00– Repair and replace facia on roof damaged by the Penczners' [sic] sign.
>  340.00– Paint facia
>  270.00– Clean first floor and cart away debris
>  650.00–Clean second floor and cart away debris
> 150.00–Repair ceiling panels damaged by water resulting from damage to the roof caused by Plaintiffs' sign.
> 290.00– Replace and/or repair ceiling tile damaged by water from leaking roof.
> 730.00–Roof repair related to damage caused by Plaintiffs' sign.
> <u>3,840.00</u>– Replacement of ceiling tile grid and tiles removed by subtenant for which Plaintiffs admitted liability.
>
> $7,010.00– TOTAL

The Court denied the Penczners['] other counter-claims for expenses, including expenses incurred in rendering the property suitable for reletting.

The Court made written findings and rendered what was referred to in the findings as a "preliminary" opinion, a copy of which is attached hereto and made a part hereof by reference. The Court invited Counsel to supply briefs and/or argument concerning these findings; and, following the submission of briefs by Counsel, the Court issued the following written ruling:

> It is the Court's opinion that the Penczners should recover fifty percent (50%) of the unpaid portion of the unpaid rent from July 1, 2004, through March 31, 2006. No discretionary costs will be awarded. Statutory court costs will be divided equally.
>
> The Penczners are the prevailing party. The lease states that "The losing party shall pay all reasonable attorneys' fees of the prevailing party." If the parties cannot agree on what is a "reasonable attorney fee, I will conduct a hearing to determine the issue."

The parties were unable to agree on fees for the Penczners' attorneys, with the result that a hearing was conducted by the Court to determine the amount of the attorneys' fees to which the Penczners would be entitled. Prior to the hearing, affidavits concerning fees were submitted by William H. Fisher, III, and Valerie Fisher, the Penczners' attorneys, and counter affidavits were submitted by Glen Reid

and Hal Gerber, attorneys for the Plaintiffs. William Fisher then submitted a rebuttal affidavit. No proof was offered at the hearing other than these affidavits and exhibits thereto. Based on these affidavits and exhibits, the Court found that the Penczners should be awarded attorneys' fees of $45,000.

During the pendency of this cause, the Plaintiffs, by agreement, paid into an escrow account the 20-months rent, which became due from August 1, 2004, until the term of the lease ended on March 31, 2006. By agreement, the attorneys for Plaintiffs and Defendants have joint control of this account, and the agreement provides that at the conclusion of the litigation, the balance of this account, including all accretions, must be paid in a manner provided in an order of this Court. There is a balance in the account currently in the approximate amount of $140,000.00, and the balance in the account should be paid to the Penczners for which the Plaintiffs should be given credit on this judgment.

**IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED:**

1. That the Plaintiffs' claims for relief against the Penczners, which are enumerated in the prayer for relief of the...original Complaint...are without merit and are hereby denied . . . .

2. That the Plaintiffs' contention that the Penczners' counter-claim for rent due them should be reduced due to their failure to mitigate damages is meritorious and that they are therefore entitled to only 50% of the rent claimed by them.

3. That the [Penczners] be, and they are hereby, granted judgment against the Plaintiffs . . . jointly and severally, for the following sums:

a. $22,569.45–City Tax Increases '98 thru '06
b. 25,806.08–County Tax Increases '98 thru '06
c.  4,808.67–Insurance Increases '98 thru '06
d.  7,010.00–Expenses for which Plaintiffs are responsible
e. 74,250.00–50% of rent and late charges from 8/1/04 thru 3/31/06
f. 45,000.00–Attorneys' Fees

$179,444.20–TOTAL

4. The Penczners' request for prejudgment interest on the amounts found to be due them for rent, taxes and insurance be, and it is hereby, denied.

5. That the funds currently held in escrow, controlled by the attorneys for the parties together with all accretions thereon, be paid to the Penczners for which the Plaintiffs are to be given credit on this judgment.

Arthur's appeals and raises four issues for review as stated in its brief:

1.	In light of lease provisions expressly permitting a Tenant to sublease all or part of the leasehold, did the trial court err in failing to hold that a Landlord's refusal to allow prospective sub-tenants constitutes either (I) a breach of the lease by Landlord that offsets the Landlord's claim for unpaid rent, or (ii) a failure by the Landlord to mitigate damages that precludes Landlord's claim for unpaid rent?

2.	After finding that a Landlord failed to market the leasehold in a commercially reasonable manner and otherwise failed to mitigate damages, did the trial court err in awarding damages to Landlord for unpaid rent?

3.	Did the trial court err in awarding a Landlord damages for many years of past tax and insurance escalations that Landlord waived, that were never billed to Tenant, and which were excluded from the agreed rent by oral modifications of the lease?

4.	In light of the foregoing errors, did the trial court err in awarding Landlord attorneys' fees and in failing to award attorneys' fees to Tenant?

In the posture of cross-appellant, the Penczners raise the following, additional issues for review:

1.	The court erred in holding that the Penczners had a duty to mitigate damages.

2.	The court's holding that the Penczners failed to mitigate their damages by not negotiating further to the sleep proposal, and that their recovery of rent should, therefore, be reduced is contrary to the law and a preponderance of the evidence.

3.	The court's holding that the Penczners failed to mitigate their damages because there was "significant variance" between the listing agreement and [Arthur's] lease and that the Penczners' recovery of rent should, therefore, be reduced on account thereof is contrary to law and the preponderance of the evidence.

4.	The court erred in holding that the attorney[s'] fees allowed the Penczners should be limited to a percentage of the fees claimed equal to the percentage which the amount recovered by them bears to the total amount claimed by them, thereby disallowing fees for the successful defense of Plaintiffs' claims vs. the Penczners['].

5.      The court erred in allowing recovery of only those repair expenses thought to be allowable under the "good condition" clause and disallowing repair expense[s] necessary to render the premises tenantable or due under other clauses of the Lease.

6.      The court erred in disallowing all prejudgment interest.

Because this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. *See* Tenn. R. App. P. 13(d).

## Breach of Lease, Mitigation of Damages, and Damages

It is well settled that the measure and elements of damages upon the breach of a lease is governed by the general principles that determine the measure of damages on claims arising from breaches of other kinds of contracts. The general rule of contracts, to the effect that the plaintiff may recover damages only to the extent of its injury, applies to leases. Damages for breach of a lease should, as a general rule, reflect a compensation reasonably determined to place the injured party in the same position as he or she would have been in had the breach not occurred and the contract been fully performed, taking into account, however, the duty to mitigate damages. In addition, damages resulting from a breach of a lease must have been within a contemplation of the parties; must have been proximately caused by the breach; and must be ascertainable with reasonable certainty without resort to speculation or conjecture. *See* 49 Am.Jur.2d Landlord & Tenant § 96 (2003).

In the instant case, Arthur's contends that the trial court erred in awarding damages to the Penczners in light of its finding that the Penczners had failed to mitigate their damages. Specifically, Arthur's asserts that the Penczners' refusal to approve the proposed subtenants constitutes a breach of the Lease under Paragraph 13 thereof. This paragraph reads:

13. ASSIGNMENT AND SUBLETTING: It is expected that Lessee, from time to time, may sublet a portion of the premises, or portions or all of the premises, to which sublet(s) Lessor agrees, provided, however, that: a) Lessee shall remain primarily responsible for the performance of all of the terms and conditions of this Lease; and b) no subtenant shall be allowed whose presence or business would be detrimental to the value of the premises to Lessor by virtue of the character of the person(s) or business. Establishments serving food and/or alcoholic beverages are not per se detrimental to the value of the premises. Lessee agrees to provide Lessor with notice in writing, thirty days in advance of any proposed sublet or assignment, of Lessee's intention to sublet; and the notice shall include a copy of the assignment or sublet agreement, the proposed subtenant's financial statement and business background, and a description of the proposed use, all for the purpose of informing

Lessor under the terms of part "b" of this paragraph. Lessee and Lessor agree to act in full good faith, each toward the other, in the implementation of this paragraph.

Under the doctrine of mitigation of damages, an injured party has a duty to exercise reasonable care and due diligence to avoid loss or minimize damages after suffering injury. *See Cook & Nichols, Inc. v. Peat, Marwick, Mitchell & Co.*, 480 S.W.2d 542, 545 (Tenn. Ct. App.1971); *Gilson v. Gillia*, 321 S.W.2d 855, 865 (Tenn. Ct. App.1958)). Generally, one who is injured by the wrongful or negligent act of another, whether by tort or breach of contract, is bound to exercise reasonable care and diligence to avoid loss or to minimize or lessen the resulting damage, and to the extent that his damages are the result of his active and unreasonable enhancement thereof, or due to his failure to exercise such care and diligence, he cannot recover. *Cook & Nichols, Inc.*, 480 S.W.2d at 545. In determining whether an injured party has fulfilled its duty to mitigate, a court must examine "whether the method which he employed to avoid consequential injury was reasonable under the circumstances existing at the time." *Action Ads, Inc. v. William B. Tanner Co., Inc.*, 592 S.W.2d 572, 575 (Tenn. Ct. App.1979) (quoting *Tampa Electric Co. v. Nashville Coal Co.*, 214 F. Supp. 647, 652 (M.D.Tenn.1963)). Despite this duty, an injured party is not required to mitigate damages where such a duty would constitute an undue burden. *Cummins v. Brodie*, 667 S.W.2d 759, 766 (Tenn. Ct. App.1983).

From our reading of the plain language of Paragraph 13 of the Lease, it appears that, although the parties acknowledge Arthur's right to sublet the Building, the Penczners retain the right to approve any proposed tenants. To that end, the paragraph requires Arthur's to provide written notice of its intent to sublet, along with a "copy of the assignment or sublet agreement, the proposed subtenant's financial statement, and business background, and a description of the proposed use." The Penczners' authority to approve or reject proposed tenants is very broad under our reading of this paragraph. While required to "act in full good faith," the sole criterion for the Penczners' decision hinges upon the question of whether the proposed subtenant's "presence or business would be detrimental to the value of the premises to Lessor by virtue of the character of the person(s) or business." The parties herein disagree as to the definition of the word "character," same being the sole basis for the Penczners' approval of proposed subtenants. In short, the term is subjective and the power of that subjectivity lies with the Penczners. Consequently, our determination of whether the Penczners failed to mitigate their damages in rejecting the two subtenants proposed by Arthur's becomes a question of whether the Penczners breached their obligation to act in good faith in rejecting the two proposals. The trial court's finding on this question is one of fact and we will not reverse that determination unless the evidence in the record preponderates against same. Tenn. R. App. P. 13(d).

In the instant case, Arthur's proposed two subtenants for the Building. There were two proposals submitted on behalf of Chef Jose Gutierrez, and one proposal on behalf of MEDIAS Sleep Diagnostic Services, an entity involved in sleep therapy. The sleep therapy sublease proposal is contained in trial exhibit ten. This exhibit consists of a June 4, 2004 letter from Mr. Kahn to Mr. Penczner, which letter references the following attachments: (1) Sublease Agreement; (2) Business Description; (3) Financial Statements. The sublease proposal is in the form of a letter from Arthur's

agent, Gary Myers, and is not the actual sublease agreement to be entered between Arthur's and the sleep clinic. The sublease proposal states that the terms of the original Lease will be honored except for five enumerated exceptions. This proposal lists "Arthur's Wine and Liquor" as "sublessor," and lists "Camden McLaughlin, Innovative Sleep Management" as "sublessee." The provided business description states:

> **MEDIAS, Sleep Diagnostic Services**, is dedicated to providing the highest quality, cost effective sleep and pulmonary services to its customers, while promoting patient education in a caring environment.
>
> At **MEDIAS**, we believe that:
>
> • Excellence of services provided will direct the success of the organization.
> • Provision of quality services is the responsibility of each member of the MEDIAS team.
> • Our customers are our most important resource and we will strive to exceed expectations while being fair and honest.
>
> Any further information can be found at www.midassleep.com

The "financial statements" provided consist of a "Medias, Inc. Balance Sheet as of April 30, 2004," and a "Medias, Inc. Profit & Loss YTD Comparison April 2004." Neither of these documents are signed. According to the balance sheet, Medias, Inc. showed a net worth of $7,354.71.

We first note that the name of the proposed subtenant is not consistent. The sleep therapy entity is referred to as MEDIAS, Inc., MEDIAS Sleep Diagnostics Services, Midassleep, and Camden McLaughlin, Innovative Sleep Management. From the record, not only is there insufficient evidence from which to determine the exact name of the proposed subtenant, but there is also evidence to suggest that this entity was not (as of the date of the proposal) financially secure enough to take on the Lease. Consequently, we cannot find that the evidence in this record preponderates against the trial court's finding that the Penczners did not breach the terms of the Lease by failing to accept this proposed subtenant based upon the information provided by Arthur's. However, in finding that the Penczners had failed to mitigate their damages to the extent necessary to recover all rents, the trial court found that the Penczners had a duty to negotiate the terms of the sublease further, as did Arthur's. From our review of the record, we cannot find that the evidence preponderates against this finding. Pursuant to both parties' duty, under Paragraph 13, to act in good faith, Arthur's should have provided a more thorough business description, and should have provided actual financial statements, as well as the proposed sublease agreement rather than a bullet-form letter outlining the changes to the original Lease. When the Penczners were not satisfied with the proposal as submitted, in the interest of good faith, they should have discussed the shortcomings with Arthur's and any remedies that could allow the proposal to go forward. This is particularly true in light of Mr. Penczner's testimony that they would have accepted the sublease had they had a

guaranty, and Mr. Kahn's testimony that either of his partners would have provided that guarantee.[3] That being said, what the record shows is that the lack of communication between the parties resulted in a stalemate, which may have been easily remedied through negotiation.

Concerning the proposals offered on behalf of Jose Gutierrez, both take the form of letters from Scott Barton, Jose Gutierrez' agent, to the Penczners' agent, Gary Myers. The first, dated May 14, 2004, is called a "Letter of Intent." This correspondence indicates that the new lease term will be "[t]wo [y]ears of Sublease from current Tenant (Arthurs), followed by Five Year new lease and Three 5 yr. options." The proposed rent for the two-year remainder of the Lease is listed as $5,500 per month (with Arthur's being entitled to $1,250 worth of food sales each month). The rent for years three through seven is proposed at $7,500 per month; rent for years eight through 12 is set at $7,750 per month; for years thirteen through seventeen, rent is established at $8,000 per month; and for years eighteen through twenty-two, rent is proposed at $8,250 per month. Neither of the two letters are signed by Mr. Gutierrez, nor his agent. We note that the Gutierrez proposals contain significant changes from the terms of the original Lease. In rejecting the Gutierrez proposal, the Penczners indicate (in their letter of May 31, 2004) that they would agree to a sublease to Mr. Gutierrez that was more in compliance with the original Lease; however, as with the sleep therapy proposal, neither of the parties attempted meaningful negotiations concerning changes to the Gutierrez proposal. Because of the significant variance between the Gutierrez proposals and the original Lease, we cannot conclude that the trial court erred in holding that the Penczners' rejection of same was reasonable. However, because of the parties' mutual duty to act in good faith, we also cannot conclude that the trial court erred in finding that the Penczners breached this duty to the extent that they failed to negotiate or otherwise compromise.

Concerning the Penczners' duty to mitigate damages related to the unexpired term of the original Lease, following Arthur's notice of its intent to vacate the Building, the Penczners hired Larry Alexander to find a replacement tenant. To that end, the Penczners and Mr. Alexander entered into a Rental Agency Agreement ("RAA"). This RAA was admitted as Exhibit 48C at trial. Under the terms of the RAA, the monthly rent is listed at $15,000.00 or whatever the Penczners agree to accept. In addition, the RAA calls for a longer lease term. In material aspects, the RAA significantly differs from the original Lease. The Penczners' duty to mitigate requires them to exercise due diligence in protecting themselves from the immediate results of Arthur's vacating the Building. From the plain language of the RAA, it appears that the Penczners were not concerned with obtaining a tenant to take over where Arthur's left off, but rather that they were concerned with obtaining significantly more rents, and a longer lease term.

The trial court did not find that the Penczners had completely failed to mitigate their damages. In fact, the trial court affirmed the Penczners' decision in rejecting the two proposals offered by Arthur's. Rather, the Penczners' breach was based upon their duty to act in good faith concerning any sublet of the Building. As discussed above, the Penczners failed in this duty based

---

[3] We note that Mr. Kahn's partner Laurence Bloch stated that he would have guaranteed the sublease of the sleep therapy entity.

upon their failure to further negotiate terms of the proposals with Arthur's; however, Arthur's too failed in this regard and thus breached its own duty of good faith. However, because the Penczners overreached in their RAA, choosing to solicit for more rents and longer terms than they were entitled to under the original Lease, we agree with the trial court that this alleged effort to mitigate their damages was unreasonable and, as such, constitutes a breach of their duty of good faith.

Turning to the issue of damages, the trial court allowed the Penczners to recover 50% of the rents from the time that Arthur's vacated the Building until the end of the Lease term. On appeal, Arthur's contends that the trial court's finding that the Penczners failed to mitigate their damages should result in a forfeiture of all rents. The Penczners assert that, based upon the trial court's determination that they did not err in rejecting the subtenant proposals, they should recover all rents due under the Lease. Based upon the foregoing discussion, Arthur's argument is not well grounded. In effect, the trial court found that the Penczners failed to act in good faith (based on the RAA) in mitigating their damages. The Penczners' argument is also on narrow footing based upon our discussion above that, in rejecting said proposals, the duty of good faith required the parties to at least entertain discussion about modifications thereto. Because both parties failed in this regard, neither should recover on this basis. Arthur's failed to provide the required information concerning its proposed subtenant, and failed to take steps toward meaningful negotiation of the proposals. The Penczners also failed to negotiate in good faith, and further breached this duty by overreaching in the RAA. Based upon the evidence before us, and the particular facts of this case, we cannot conclude that the trial court erred in fashioning the remedy for these mutual shortcomings at 50% of the total rents due.

**Taxes and Insurance**

The Lease provides, in relevant part that:

36. TAX AND INSURANCE ESCALATOR: As additional rent, Lessee agrees to pay Lessor a sum equal to the amount by which city and county realty taxes on the premise for any period during the term hereof are increased by virtue of an increase in the assessment of the premises over that established for the year 1984, or by virtue of an increase in the assessment of the demised premises over that established for the year 1984 which reassessment is made pursuant to a city-wide or county-wide reassessment of real estate. This escalator provision also applies to any hazard insurance premiums now in effect on the premises. Additionally, Lessee agrees to pay any increased insurance premiums for hazard occasioned solely by any alterations or additions to the premises made by Lessee.

Pursuant to this clause, the trial court awarded the Penczners $22,569.45 in City Tax increases 1998 through 2006, $25,806.08 in County Tax increases 1998 through 2006, and $4,808.67 in insurance increases from 1998 through 2006. Arthur's asserts that these awards were erroneous, and specifically contends that the Penczners' failure to "bill" Arthur's for these monies constitutes a waiver. We have reviewed the testimony and conclude that same does not preponderate in favor

of a finding of waiver. In fact, the respective testimonies of Messrs. Kahn and Penczner are disputed. Mr. Kahn testifies that the Penczners stopped billing for increases in taxes and insurance after 1996. Furthermore, Mr. Kahn stated that, upon questioning Mr. Penczner about whether Arthur's owed under Paragraph 26, Mr. Penczner stated that Arthur's would not have to pay so long as it had not found a subtenant for the upper floor of the Building. In contrast, Mr. Penczner testified that, from the outset, he had difficulty collecting for increased taxes and insurance. In support of this statement, Mr. Penczner stated that the dispute over taxes and insurance had resulted in the execution of a Memorandum of Understanding dated June 25, 1986, which Memorandum was admitted as Exhibit 28. The Memorandum states, in pertinent part, that "[i]t is understood and agreed that any increases in taxes or hazard insurance premiums over and above stated stipulated amounts will be paid by Lessee to Lessor as additional rent." At the hearing, Mr. Penczner testified that, even after the execution of the Memorandum, he had difficulty collecting these monies from Arthur's. Mr. Penczner testified that he never agreed that Arthur's would be relieved from this obligation pending sublease of the second floor. Moreover, Mr. Penczner stated that he had written Arthur's numerous times, seeking payment of these monies, but that his requests were ignored. Based upon Arthur's failure to comply, Mr. Penczner testified that he did stop billing after 1996, but that he never agreed to forfeit these payments.

The trial court resolved this dispute in favor of the Penczners. It is well settled that, when the resolution of the issues in a case depends upon the truthfulness of witnesses, the trial judge who has the opportunity to observe the witnesses in their manner and demeanor while testifying is in a far better position than this Court to decide those issues. *See McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn.1995); *Whitaker v. Whitaker*, 957 S.W.2d 834, 837 (Tenn. Ct. App. 1997). The weight, faith, and credit to be given to any witness's testimony lies in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court. *See id.*; *see also Walton v. Young*, 950 S.W.2d 956, 959 (Tenn.1997). From our reading of the record and the relevant paragraph of the Lease, we cannot conclude that the evidence preponderates against the trial court's finding that the Penczners did not waive their right to these monies.

### Recovery of Damages based upon damage to the Building

In addition to rents, the trial court awarded the Penczners $7,010.00 in damages for necessary repairs to the Building as set out above. On appeal, the Penczners assert that the trial court erred in allowing only a portion of the claimed expenses. We disagree. Paragraph 19 of the Lease provides, in relevant part:

> Lessee may remove trade fixtures affixed by Lessee, provided, however, that Lessee shall forthwith repair any damage to the premises caused by such removal. All other fixtures installed by Lessee may be removed by Lessee only if Lessee restores the portion of the premises affected by said removal to its condition prior to the installation of the fixtures.

The trial court's finding concerning the nature and extent of damage caused to the Building by Arthur's removing its fixtures is one of fact. Consequently, we will not reverse the trial court on this issue unless the evidence in record preponderates against this finding. Tenn. R. App. P. 13(d). Having reviewed the record before us, we find that the specific damage to the Building enumerated in the trial court's order, as set out above, and for which the trial court granted damages to the Penczners are well founded in the record. Although the Penczners assert that they are entitled to recover for other alleged damages to the Building over and above those allowed by the trial court, we disagree. Pursuant to the Paragraph 19 of the Lease, Arthur's is responsible for those damages arising from the removal of its fixtures from the Building. In the instant case, the proof shows that certain damage occurred to the facia of the Building, and to the interior stemming from the removal of Arthur's sign. The Penczners also suffered damages based upon having to haul away debris left by Arthur's. In reviewing this record, including the testimony of Mr. DeLuca, the general contractor hired by the Penczners to make the repairs, we cannot conclude that the evidence preponderates against the trial court's finding as to damages for repairs. Paragraph 11 of the Lease provides that:

> Lessee agrees to deliver to Lessor physical possession of the premises upon the termination of the Lease, in good condition, excepting ordinary wear and tear . . . or damage from any other cause, unless such cause is attributable to the negligence of the Lessee.

From our reading of the record, the damages disallowed by the trial court could fall under either the ordinary wear and tear, or the more broad damage from any other cause [save Lessee's negligence] exceptions set out in Paragraph 11. Because the evidence does not preponderate against the trial court's decision to disallow certain claimed damages, we must affirm. Tenn. R. App. P. 13(d)

### Attorney's Fees

We now turn to the Penczners' issue regarding the trial court's award of attorney's fees. The Lease provides, in relevant part, as follows:

> 39. ATTORNEY FEES: In the event of any case or controversy arising under the terms of this Lease whereby it becomes necessary for either or both parties to hire an attorney, it is agreed hereby between the Lessor and the Lessee that the losing party in the case or controversy shall pay all reasonable attorney fees of the prevailing party.

The combined fees submitted by Mr. Fisher and Ms. Fisher, the Penczners' attorneys, were $148,000. This amount was supported by affidavits and corresponding time sheets. Arthur's attorneys argued that much of the claimed work was "unnecessary and irrelevant." Following a hearing, the trial court allowed the Penczners to recover $45,000 in attorneys' fees. On appeal, the Penczners contend that, under Paragraph 39 of the Lease, they are entitled to recover all of their attorneys' fees due to the trial court's statement, in its Order, that "[t]he Penczners are the prevailing

party." Arthur's contends that the Penczners are entitled to none of their attorneys' fees based upon the trial court's determination that they failed to mitigate their damages.

Based upon our determination that both parties were at fault to some degree in this matter, and that damages in the amount of 50% of the rents was just, it would be inequitable for the Penczners to recover the full amount of attorney's fees claimed in this case. That being said, the Penczners did prevail to a greater extent than Arthur's in that they were awarded damages for taxes and insurance increases and for damage to the Building. Consequently, under the Lease, Penczners should recover some of their attorney's fees as the, for lack of a better term, more prevailing party. We have reviewed the record and we conclude that the trial court did not abuse its discretion in awarding $45,000. In light of the trial court's ruling, this amount was reasonable. Finally, we conclude that the trial court did not abuse its discretion in failing to award pre-judgment interest.

For the foregoing reasons, we affirm the Order of the trial court. Costs of this appeal are assessed one-half to the Appellants, Arthur Kahn, Louis Loeb, Larry Bloch and Peggy E. Burch, and their respective sureties, and one-half to the Appellees, Paul J. Penczner and Jolanda Penczner.

_____
DAVID R. FARMER, JUDGE