IN THE COURT OF APPEALS OF TENNESSEE
AT Knoxville
Assigned on Briefs April 12, 2010

## CLYDE RICHARD ASLINGER v. CARRIE LYNNE ASLINGER

**Direct Appeal from the Circuit Court for Hamilton County**
**No. 07D213     L. Marie Williams, Judge**

**No. E2009-00954-COA-R3-CV - FILED MAY 3, 2010**

This is a divorce case. Father/Appellant appeals the trial court's decision to designate Mother/Appellee the primary residential parent of the parties' two minor children, and the trial court's refusal to enter an order restraining the Mother's paramour from being around the children. This Court concludes that the evidence does not preponderate against the trial court's factual findings, and that the custody decision is not contrary to the children's best interests. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

Alan R. Beard, Chattanooga, Tennessee, for the appellant, Clyde Richard Aslinger.

Carrie Lynee Aslinger, Soddy Daisy, Tennessee, Pro Se.

**OPINION**

Appellant Clyde Richard Aslinger and Appellee Carrie Lynne Aslinger were married on February 28, 1997. Two children were born to the marriage. The parties separated in December 2006. On January 25, 2007, Mr. Aslinger filed a Complaint for Divorce against Ms. Aslinger in the Circuit Court at Hamilton County. In his Complaint, Mr. Aslinger alleged, in relevant part, that Ms. Aslinger had left the marital home, leaving Mr. Aslinger with sole responsibility for the minor children. According to the Complaint, Ms. Aslinger had moved into a one-bedroom "shack" on her parents' property, and had begun staying out all night "drinking and partying with friends." In essence, Mr. Aslinger alleged that Ms. Aslinger's lifestyle was such that she was unable to provide proper care and stability for the children. Consequently, Mr. Aslinger asked the court to name him the  primary residential

parent of the children. On January 25, 2007, the court entered a temporary custody and restraining order,[1] placing temporary custody of the children with Mr. Aslinger. This order also gave Ms. Aslinger limited visitation as set out in the proposed parenting plan filed by Mr. Aslinger.

On May 23, 2007, Ms. Aslinger filed an answer and counter-complaint. In her answer, Ms. Aslinger specifically denied the allegations made in Mr. Aslinger's Complaint. In her counter-complaint, Ms. Aslinger asked that she be named the primary residential parent, and that the court adopt her proposed parenting plan.

On May 23, 2007, Ms. Aslinger also filed a motion asking the court to set shared parenting time for the minor children during the pendency of the divorce. Concurrent therewith, Ms. Aslinger also filed a motion asking the court for a hearing on the merits of the temporary custody order that had been entered on January 25, 2007. Specifically, Ms. Aslinger alleged that the facts averred in Mr. Aslinger's complaint for divorce were insufficient, as a matter of law, to support the court's temporary custody decision.

On May 31, 2007, Mr. Aslinger filed a motion and request for temporary restraining order, seeking to have Ms. Aslinger submit to drug testing, and seeking to prohibit Ms. Aslinger from "taking the children around her boyfriend, Ricky Smith, pending further orders." By order of June 7, 2007, the trial court resolved the parties' respective motions. Specifically, the court ordered both parties to submit to "hair follicle drug tests," and ordering that the parties "are restrained from taking the children around or having any contact with [Ms. Aslinger's] friend, Ricky Smith, pending further orders of the court."

On May 29, 2008, Ms. Aslinger filed a motion, seeking to have the temporary restraining order lifted so that the children could be around Ricky Smith. In support of her motion, Ms. Aslinger avers that she and Mr. Smith "are expecting a child in about three months," that the pregnancy "is considered to be a high risk pregnancy," and that she "needs the assistance of Ricky Smith during the last several months of the pregnancy...."

On August 8, 2008, the court entered an order denying Ms. Aslinger's request that the temporary restraining order be lifted This same order also reinstated Ms. Aslinger to the

---

[1]We note that the trial court styled the order as a "custody" order. Our legislature amended our statutes to instruct the courts to replace the traditional custody terminology with the less divisive terminology related to parenting plans. *See* Tenn. Code. Ann. § 36-6-404 (2005); JANET L. RICHARDS, RICHARDS ON TENNESSEE FAMILY LAW (2D ED.) § 8-2(e) at 184, and 2007 Cum. Supp. At § 8-2(e); Don L. Ash, *Bridge Over Troubled Water: Changing the Custody Law in Tennessee*, 27 U. MEM. L. REV.769, 804 (Summer 1997). The trial court's temporary custody order is equivalent to a temporary parenting plan.

family bail-bonding business and made certain temporary divisions of marital assets related to that business. On August 18, 2008, the trial court entered an order, granting Ms. Aslinger $400 per week in *pendente lite* support.

The divorce trial was bifurcated, with the property issues, which are not the subject of this appeal, being heard in December 2008. On January 23, 2009, the court entered a memorandum opinion, concerning "child related issues". The order provides, in relevant part:

> Having heard the proof in this cause, the Court finds the temporary restraining order [that prohibited Ricky Smith from being around the children] was issued based upon false allegations. Accordingly, that temporary restraining order is set aside. Because the final proof has been heard in this cause, the Court will enter the Permanent Parenting Plan which will be discussed in this Order.
>
> The Court has heard the testimony of the witnesses and has interviewed the older child.[2] The allegations plaintiff Richard Aslinger makes against defendant Carrie Aslinger are that she has given birth to a third child fathered by a man named Ricky Smith who he contends is a pedophile and a drug addict. Further, he contends Carrie Aslinger has been verbally abusive to the children and has a violent temper.
>
> Carrie Aslinger contends that she has been the primary residential parent of the children for most of their lives and that Mr. Aslinger only became involved in the children's lives when the divorce was filed. Further, she contends he has significant anger issues and it is not in the best interest of the children to continue the 50-50 split of parenting time that had been the status quo before the final hearing.
>
> The Court first will observe that, with the exception of the minor child, not a single person who has testified in this

_____

[2] The record indicates that, the child's testimony in chambers was captured by a court reporter. Unfortunately, this transcript was subsequently lost. However, the child's testimony is preserved in the record as a Tenn. R. App. P. 24(b) Statement of the Evidence. The child was eleven at the time of the testimony.

cause has any credibility. They are all used to having their own way and exaggerating or withholding information to achieve that result. The Court draws this conclusion from the demeanor of the witnesses in open court as well as their testimony. The Court found the minor child [] to be extremely credible and remarkably well-adjusted despite the animosity between his parents.

The Court finds Carrie Aslinger has the greater ability to instruct, inspire and encourage the children to prepare for a life of service and [to] compete successfully in this society that the children will face as adults.

Defendant Carrie Aslinger has taken greater responsibility for parenting the children up until the time the temporary restraining order was entered.

\*                                      \*                                      \*

Mrs. Aslinger has been the primary caregiver throughout the lives of these children. Mr. Aslinger was absent from the home for approximately 20 weeks a year while he was in Japan as a professional wrestler from the years 2000 to 2005, with the exception of the time he was being rehabilitated from bilateral knee surgery.

Both parents love the children and the children love both parents.

The children need a more stable environment than the 50-50 split in which they have been existing. The lack of cooperation between the parents has been a great stress factor for the children. Each parent has certain characteristics that would help their ability to parent and address the welfare of the children.

The children are close and need to be on the same residential schedule. They now have a half-sister in the mother's home.

The stable environment in which the children lived prior to the filing of the divorce and the entry of the temporary restraining order was in a home in which the Mother was the primary parent. While there are allegations of physical and emotional abuse on the part of both parties, the Court finds the greater physical and emotional abuse is directed by the Father at the children. Additionally, the Court finds both parents have been physically violent towards each other.

The Court has concerns about the character and behavior of Ricky Smith whom Carrie Aslinger intends to marry and who is the father of her youngest child, which child is the half-sister of the two children involved in this litigation. While the Court does not find the evidence establishes that Mr. Smith is a pedophile as alleged, the Court finds he has numerous character flaws and behavioral issues that are not a positive influence on the children. Unfortunately, he shares all these characteristics with the children's father. Further, there is no evidence of any alleged inappropriate behavior of Ricky Smith directed towards these children.

Based upon the foregoing findings, the trial court named Ms. Aslinger the primary residential parent of the children. Mr. Aslinger was granted Wednesday, after-school parenting time until 8:00 p.m., every-other-weekend parenting time, and one week of summer vacation. The court granted the parties standard vacation and holiday parenting time.

All remaining issues were adjudicated by the trial court's Final Decree, which was filed on April 16, 2009, and by which the parties were granted a divorce. The court designated Ms. Aslinger as the primary residential parent, and adopted her proposed parenting plan. The Final Decree also incorporates, by reference, the memorandum opinion filed on January 23, 2009, *supra*. Attached to the court's order is a child support worksheet, which supports the calculation of child support.

Mr. Aslinger appeals, and raises two issues for review as stated in his brief:

1. Was the trial court's decision regarding primary parenting responsibility for the minor children contrary to the weight of the evidence and contrary to the best interests of the children.

2. Did the trial court err in refusing to impose restrictions on the

-5-

children's contact with Ricky Smith, whether the Mother was the primary residential parent or not.

Because this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. See Tenn. R. App. P. 13(d). Furthermore, when the resolution of the issues in a case depends upon the truthfulness of witnesses, the trial judge who has the opportunity to observe the witnesses and their manner and demeanor while testifying is in a far better position than this Court to decide those issues. *See McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn. 1995); *Whitaker v. Whitaker*, 957 S.W.2d 834, 837 (Tenn. Ct. App.1997). The weight, faith, and credit to be given to any witness' testimony lies, in the first instance, with the trier of fact, and the credibility accorded will be given great weight by the appellate court. *Id*.; *see also Walton v. Young*, 950 S.W.2d 956, 959 (Tenn.1997). "If the trial court's factual determinations are based on its assessment of witness credibility, this Court will not reevaluate that assessment absent clear and convincing evidence to the contrary." *Heffington v. Heffington,* No. M2009-00434-COA-R3-CV, 2010 WL 623629 (Tenn. Ct. App. Feb. 19, 2010).

## Permanent Parenting Plan

In any action for absolute divorce involving a minor child, the trial court must incorporate into its final decree a permanent parenting plan. Tenn. Code Ann. § 36-6-404(a). A permanent parenting plan is defined as a "written plan for the parenting and best interests of the child, including the allocation of parenting responsibilities and the establishment of a residential schedule, as well as an award of child support...." Tenn.Code Ann. § 36-6-402(3)(2000). In making its decision regarding entry of a permanent parenting plan, the trial court should consider the factors set out at Tenn. Code Ann. § 36-6-404(b) (2005). While the trial court is obligated to consider all of the relevant factors in reaching its decision, it is not required to list in its opinions or orders each of those factors, nor its conclusion as to how a factor affected the overall determination. *Coley v. Coley*, M2007-00655-COA-R3-CV, 2008 WL 5206297, *6 (Tenn. Ct. App. December 12, 2008).

On appeal, Mr. Aslinger contends that the trial court's decision to designate Ms. Aslinger as the primary residential parent was not supported by the weight of the evidence and that the decision is contrary to the best interests of these children. We disagree. Following our review of the entire record, we first note that the trial court's findings of fact, as set out in the memorandum opinion above, are very much in line with the testimony adduced at the hearings. By his own testimony, Mr. Aslinger admits that, during most of the marriage, he was working abroad for up to twenty weeks per year. Ms. Aslinger testified

that, because of Mr. Aslinger's frequent absences from the marital home, she was responsible for the children's day-to-day care. Mr. Aslinger does not dispute this testimony; however, we note that, based upon the temporary order of custody filed in this case, Mr. Aslinger has taken a more active role with his children since the filing of this divorce action. However, the Statement of the Evidence concerning the older child's *in camera* testimony, reveals that the child stated that his mother is the primary caregiver, and that he wishes to live with her. Without disclosing too much of the child's sensitive testimony, the child expressed some fear of his father, and a desire to live in his mother's household.

Our review of the evidence reveals that both parents have been physically abusive toward each other. While there is no concrete indication of physical abuse toward the children, this Court, as did the trial court, has some concerns about Mr. Aslinger's disciplinary methods. However, we cannot go so far as to conclude that either parent poses a threat to these children, physically or otherwise.

From the record as a whole, and in light of the relevant factors set out at Tenn. Code Ann. § 36-6-404(b), we conclude that the evidence does not preponderate against the trial court's findings, nor does the evidence preponderate against the trial court's decision to name Ms. Aslinger the primary residential parent. Moreover, the trial court made a credibility determination and specifically found that Mr. Aslinger's allegations were false, and that neither Mr. Aslinger, nor any other adult that testified, had any credibility. After reviewing the record, we do not find that there is clear and convincing evidence to contradict the trial court's findings on the credibility of the parties. We agree with the trial court that Ms. Aslinger's home will provide a more stable environment for these children, who are already accustomed to their mother being their primary parent.

### Ricky Smith

On appeal, Mr. Aslinger argues that Ms. Aslinger's paramour, Mr. Smith, poses a substantial risk to these children. While there is testimony in the record indicating that Mr. Smith has acted inappropriately around young girls, there is no indication that he has ever acted inappropriately around the children at issue in this appeal. However, the trial court's specific determination that none of the witnesses, with the exception of the child, are credible, bears heavily on the weight this Court vests in the testimony concerning Mr. Smith's alleged behaviors. Moreover, in setting aside the temporary restraining order, the trial court specifically found that the order had been procured through false testimony against Mr. Smith, which testimony was proffered by Mr. Aslinger. More importantly, the child, as the sole credible witness, stated that he had no concerns about being around Mr. Smith, and that he loved everyone in his mother's home. Obviously, the trial court believed the child's testimony above all others, and we have no reason to question the trial court's reliance upon

the child's testimony. Mr. Aslinger has not pointed this Court to, nor have we found, clear and convincing evidence to contradict the trial court's credibility findings. Considering the trial court's findings of credibility, we cannot conclude that the evidence preponderates against the trial court's findings concerning Mr. Smith, nor can we conclude that the children's best interests are undermined by the court's ultimate decision to name Ms. Aslinger the primary residential parent, and to decline Mr. Aslinger's request that Mr. Smith not be permitted around the children.

For the foregoing reasons, we affirm the order of the trial court. Costs of this appeal are assessed against the Appellant, Clyde Richard Aslinger, and his surety.

_____

J. STEVEN STAFFORD, JUDGE