IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 13, 2010 Session

## MICHAEL D. HERSHEY ET AL. v. WALLACE CATHEY ET AL.

**Appeal from the Circuit Court for Wilson County**
**No. 15088      John D. Wootten, Jr., Judge**

---

**No. M2009-01887-COA-R3-CV - Filed July 26, 2010**

---

This is an action to enforce a Declaration of Covenants, Conditions and Restrictions for a subdivision. The trial court found the defendant homeowners erected a fence without having obtained proper approval from the Architectural Control Committee, that the fence was in violation of restrictive covenants, and that the fence must be removed. We have determined the evidence does not preponderate against the trial court's findings that defendants failed to obtain the necessary approval to construct the fence and that the fence is in violation of restrictive covenants; thus, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed as Modified**

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., M.S., and ANDY D. BENNETT, J., joined.

Timothy A. Davis, Lebanon, Tennessee, for the appellants, Wallace Cathey and wife, Darlene Cathey.

Byron M. Gill, Lebanon, Tennessee, for the appellees, Michael D. Hershey and wife, Suzana Hershey, and Robert E. Black.

### OPINION

The matters at issue pertain to the restrictive covenants found in the Declaration of Covenants, Conditions and Restrictions of South Fork Subdivision, Section III ("Restrictions"), in Wilson County, Tennessee.

Plaintiffs, Michael D. Hershey and wife, Suzana Hershey, and Defendants, Wallace Cathey and wife, Darlene Cathey, own adjoining lots in the subdivision known as South Fork

III. Plaintiffs own one residential lot which fronts Amarillo Drive. Defendants own two lots which back up to each other. Defendants' home is built on the lot that fronts Cartel Court; Defendant's second lot faces Amarillo Drive and is immediately adjacent to Plaintiffs' lot.

Plaintiffs filed this action, a Petition for Temporary Injunction and Permanent Injunction, seeking to enforce the Restrictions when Defendants began construction of a fence on both of their lots. Plaintiffs asserted that Defendants had not obtained approval to erect a fence and that the fence was not in compliance with the applicable restrictive covenants stated in the Restrictions. Defendants asserted that they obtained the requisite approval to erect the fence and that strict compliance with the Restrictions had been waived.

The Restrictions applicable to this action include, *inter alia*, Article III Section 1, and Article III Section 2 Paragraph 2.

Article III Section 1 of the Restrictions mandates that:

No building, fence, wall or other structure, including material changes in the landscaping of each lot, shall be commenced, erected, or maintained upon the Properties, nor shall any exterior addition to or change or alteration therein be made until the plans and specifications showing the nature, kind, shape, heights, materials, and location of the same shall have been submitted to and approved in writing as to harmony of external design and location in relation to surrounding structures and topography by the Declarant, or after completion of initial construction on each lot by the Architectural Control Committee. For any proposed construction on a lot or lots, one (1) set of plans shall be submitted, upon approval, it will be signed and returned.

Article III Section 2 Paragraph 13 places further restrictions on the placement of fences:

No fence of any kind may be erected on any lot except for a fence approved by the Architectural Control Committee. Such fence must be approved as to location and materials in the sole discretion of the Architectural Control Committee. Any fence shall extend no further forward than the rear of the principal structure. The front yard shall not be fenced.

At trial, Wallace Cathey testified that when he purchased the lots he told the developer of South Fork, Tony Watson, who instituted the Restrictions, that he intended to build a fence on both lots. Cathey, however, admitted that he never gave Watson any specifics about the proposed fence and that no plans or specifications for a fence were submitted to Watson;

Cathey merely informed Watson that he wanted to build a fence. Watson testified that he does not remember specifics of the conversation with Cathey. Watson also testified that he did not approve and never would have agreed to the location of Cathey's fence – one that extended from the back of the residential dwelling on the improved lot through the unimproved lot to Amarillo Drive.

Following a bench trial, the trial court determined that the Restrictions required that plans and specifications to be submitted to the Architectural Control Committee for its approval, that no plans or specifications were ever submitted, and that Defendants had not obtained the requisite approval to construct the fence at issue.[1] Based on these findings the trial court granted a permanent injunction, which included an order that Defendants remove the fence and return the property to its previous condition. The trial court also ordered that any future plans for a fence be submitted to the attention of Bob Black, who constituted the Architectural Control Committee. This appeal followed.

Defendants assert the trial court erred in finding that they failed to obtain proper approval for construction of the fence. Defendants also assert the trial court erred in ruling that any future construction plans would have to be presented to Bob Black. We will deal with each of those issues in turn.

## STANDARD OF REVIEW

The standard of review of a trial court's findings of fact is de novo, and we presume that the findings of fact are correct unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 296 (Tenn. Ct. App. 2001). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *Id.*; *see also The Realty Shop, Inc. v. R.R. Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999). Where the trial court does not make findings of fact, there is no presumption of correctness, and "we must conduct our own independent review of the record to determine where the preponderance of the evidence lies." *Brooks v. Brooks*, 992 S.W.2d 403, 405 (Tenn. 1999). We also give great weight to a trial court's determinations of credibility of witnesses. *Estate of Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997); *B & G Constr., Inc. v. Polk*, 37 S.W.3d 462, 465 (Tenn. Ct. App. 2000). Issues of law are reviewed de novo with no presumption of correctness. *Nelson v. Wal-Mart Stores, Inc.*, 8 S.W.3d 625, 628 (Tenn. 1999).

---

[1] In its order the trial court stated, "Defendants had full knowledge of [the] Restrictions and, despite that fact, violated the same by failing to obtain proper approval for their construction plans and by attempting to construct a non-compliant fence on their [p]roperties."

**ANALYSIS**

I.

Defendants claim that Watson, while serving in his capacity as the Architectural Control Committee, approved the construction of the fence following his conversation with Wallace Cathey. They contend that Watson had full authority to grant approval by waiving the Restrictions and they claim the term "changes in the character of the community" is ambiguous and that the clause should be stricken or that the character of the community has changed as to justify waiver of the Restrictions by the Architectural Control Committee. We disagree for several reasons.

The trial court made a specific finding of fact that Defendants did not obtain approval to build the fence. Pursuant to the de novo standard of review, we presume that the findings of fact by the trial court are correct unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Rawlings*, 78 S.W.3d at 296. For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *Id*. We have determined the evidence does not preponderate against this important finding of fact.

Defendants admit that Cathey had but one brief conversation with Watson concerning his desire to build a fence and that brief conversation occurred when Defendants were purchasing the lots in question. Moreover, Defendants admit that no plans and specifications were ever presented. Further, Watson states that he did not approve the fence and more emphatically, he insisted that he would never approve a fence such as that being constructed by Defendants.

Although the Restrictions authorize the Architectural Control Committee to waive any restrictive covenants and approve "plans presented if the development of new materials, construction techniques or changes in the character of the community justify such actions," no plans were "presented." The Restrictions expressly make the presenting of "plans" a condition precedent to the right of the Committee to waive any restrictive covenants. As no plans were ever presented, the Architectural Control Committee was without authority to waive any restrictive covenants. Moreover, there is no evidence of a change in character of the community, certainly not one to justify the waiver alleged by Defendants. Most importantly, Watson made it perfectly clear that he did not waive any requirements for the construction of the fence being built by Defendants.

-4-

For the reasons stated above, the evidence does not preponderate against the trial court's finding that Defendants did not obtain approval to build the fence or that the restrictive covenants were waived.

II.

Defendants also challenge the trial court's order that requires Defendants submit to Bob Black any future requests for approval to construct a fence.

Watson resigned as the sole member of the Architectural Control Committee in a 2005 letter, and filled "the vacancy" on the committee by appointing Black as his successor. In the letter Watson states that Black is to be the Architectural Control Committee for South Fork IV; however, there is no section IV; only sections I, II and III. It appears that the reference to South Fork "IV" is a typographical error; however, it is not necessary for this court to make that determination or to decide whether Black was duly appointed to fill the vacancy in 2005. This is because Black has made no decisions relative to the issues on appeal in his capacity as the Architectural Control Committee for South Fork III. Moreover, the makeup of the Architectural Control Committee for South Fork III may change from time to time and Black may or may not be serving as the Architectural Control Committee if and when Defendants choose to submit written plans and specifications to obtain approval to construct a fence in the future.[2]

Accordingly, we modify the trial court's order to the extent the order mandates that any future request for approval to construct a fence be submitted to "Bob Black." On remand the order should be modified by the trial court to reflect that any future request(s) shall be submitted as required by the Restrictions then in effect to the person or persons then serving as the Architectural Control Committee of South Fork III.

IN CONCLUSION

The judgment of the trial court is affirmed, except as modified herein, and this matter is remanded for further proceedings. Costs of appeal are assessed against Defendants, Wallace and Darlene Cathey, for which execution may issue.

_____<br>FRANK G. CLEMENT, JR., JUDGE

---

[2]Article III Section 1 states in pertinent part: "Any vacancy on [the Architectural Control] Committee shall be filled by Declarant [Tom Watson] until such time as the duty to fill such vacancy shall be delegated to the Owners."