IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 15, 2010

## IN THE MATTER OF: EMILY A., MEGAN A., and LINDSEY A.

**Direct Appeal from the Juvenile Court for Maury County**
**No. 71748-71750     George L. Lovell, Judge**

**No. M2009-01710-COA-R3-PT - Filed February 16, 2010**

This is an appeal in a termination of parental rights case. Finding that the statutory grounds of substantial non-compliance with a permanency plan and persistence of conditions, and that termination is in the best interest of the children, have all been shown by clear and convincing evidence, we affirm.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Juvenile Court Affirmed**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., J. and ANDY D. BENNETT, J., joined.

Robert C. Richardson, Jr., Columbia, Tennessee, for the appellant, Brian A.

Robert E. Cooper, Jr., Attorney General and Reporter; and Michael E. Moore, Solicitor General; Amy T. McConnell, Assistant Attorney General, for appellee, State of Tennessee, Department of Children's Services.

## OPINION

On May 4, 2009, the Appellee, Department of Children's Services ("DCS") filed a petition to terminate the parental rights of Appellant, Brian A. ("Father") and Stacy S. ("Mother") to their children, Emily A. (d.o.b. 4/24/2002), Megan A. (d.o.b. 7/21/1999), and Lindsey A. (d.o.b. 4/25/2001) (collectively "children").[1] The children have a lengthy history with DCS in both Tennessee and Texas, and have been in and out of state custody throughout the majority of their lives.

---

[1] Mother's parental rights to the children were terminated by the trial court. Mother has not appealed and therefore we will not address the termination of her parental rights. At the time the petition to terminate was filed, Mother and Father were married. They have subsequently divorced.

The children's latest experience with DCS began in April 2007. Mother was arrested on April 20, 2007, for driving drunk. After being in police custody for approximately three hours, Mother informed the police that the children were home alone. Once Mother informed the police, a child protective services referral was made. Just two days prior to her arrest, Mother had successfully completed a ninety day trial home visit under the supervision of DCS. On April 25, 2007, a child and family team meeting was held. Father was in attendance. Father was found not to be an appropriate placement for the children as he had not completed the goals of a permanency plan when the children were previously in DCS custody and because at that point in time, Father was on probation for solicitation to commit aggravated robbery. The children were then placed in the same foster home in which they had previously been placed.

On May 1, 2007, DCS filed a petition to adjudicate the children dependent and neglected and for temporary custody. The trial court entered a protective custody order on May 1, 2007, finding probable cause to believe the children were dependent and neglected, and placed the children in the temporary custody of the state. On August 20, 2007, after Father waived his adjudicatory hearing, the trial court entered an order adjudicating the children to be dependent and neglected by clear and convincing evidence.

After Mother's April 2007 arrest, several permanency plans were entered in this case. Each plan had a stated goal of reunification or adoption. The first was entered on May 9, 2007. Under the May 2007 plan, Father was required to complete a mental health intake, complete a parenting class, complete an alcohol and drug assessment, and continue to meet with his probation officer and not incur new charges. A second permanency plan was entered in May 2008. The May 2008 plan indicated that the mental health intake had been completed and that Father had resolved his legal issues, but added the requirements of individual counseling, complete an alcohol and drug assessment, obtain stable housing, submit to a hair follicle drug test, and participate in visitation with the children. Also, under the May 2008 plan Father was required to have another parenting assessment and continue with parent education because a previous assessment indicated a high risk of physical abuse to the children. Father objected to this plan and the new requirements. He felt that he had complied with the prior plan and told DCS that he would only complete this plan if court ordered. A third plan was entered in February 2009, containing the same requirements as the May 2008 plan. All three plans were approved by the court.

DCS filed its petition to terminate parental rights on May 4, 2009, based on the grounds of substantial non-compliance with the permanency plan and persistence of conditions. Father filed an answer on June 1, 2009, denying all allegations and asking that the petition be dismissed. A trial was held on July 27, 2009. At the conclusion of the trial, the trial court terminated the parental rights of Father, finding both substantial non-

compliance with the permanency plans and persistence of conditions. An order was entered on August 9, 2009, reflecting this decision and specifically stating that the trial court found by clear and convincing evidence: (1) Father has "failed to comply in a substantial manner with those reasonable responsibilities set out in the foster care plans related to remedying the conditions which necessitate foster care placement; (2) Father has "not remedied the conditions that [led] to the removal or other conditions pursuant to T.C.A. §§36-1-113(g)(3) in that the children have been removed by order of this court for a period of six (6) months; the conditions which led to their removal still persist;... [and] there is little likelihood that these conditions will be remedied at an early date;" and (3) that it is in the best interest of the children that Father's parental rights be terminated. In its order, the trial court stated that it found Father's testimony to be credible.

Father timely appealed from this decision and raises the following issues, as we restate them:

1. Whether there was a finding by clear and convincing evidence that DCS had proven the statutory grounds for termination, and that termination was in the best interest of the children; and was this finding accurately conveyed from the bench ruling to the written order?

2. Whether there was clear and convincing evidence that Father was substantially non-compliant with the requirements of the permanency plan?

3. Whether there was clear and convincing evidence that DCS made reasonable efforts to assist Father in reunification?

4. Whether there was clear and convincing evidence of persistence of conditions?

5. Whether there was clear and convincing evidence that termination of Father's parental rights was in the best interest of the children?

## Analysis

Under both the United States and Tennessee Constitutions, a parent has a fundamental right to the care, custody, and control of his or her child. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174 (Tenn. 1996). Thus, the state may interfere with parental rights only if there is a compelling state interest. *Nash-Putnam*, 921 S.W.2d at 174-75 (citing *Santosky v. Kramer*, 455 U.S. 745 (1982)). Our termination statutes identify "those situations in which the state's interest in the welfare of a child justifies interference with a parent's constitutional rights by setting forth grounds on which termination proceedings can be brought." *In re W.B.*, Nos. M2004-00999-COA-R3-PT, M2004-01572-COA-R3-PT, 2005 WL 1021618, at *7 (Tenn. Ct. App. Apr. 29, 2005) (citing Tenn. Code Ann. § 36-1-113(g)). A person seeking to terminate parental rights must prove both the existence of one of the statutory grounds for termination and that termination

is in the child's best interest. Tenn. Code Ann. § 36-1-113(c); ***In re D.L.B.***, 118 S.W.3d 360, 367 (Tenn. 2003); ***In re Valentine***, 79 S.W.3d 539, 546 (Tenn. 2002).

Because of the fundamental nature of the parent's rights and the grave consequences of the termination of those rights, courts must require a higher standard of proof in deciding termination cases. ***Santosky***, 455 U.S. at 769. Consequently, both the grounds for termination and the best interest inquiry must be established by clear and convincing evidence. Tenn. Code Ann. § 36-3-113(c)(1); ***In re Valentine***, 79 S.W.3d at 546. Clear and convincing evidence "establishes that the truth of the facts asserted is highly probable ... and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence." ***In re M.J.B.***, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004). Such evidence "produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established." ***Id***. at 653.

In light of the heightened standard of proof in termination of parental rights cases, a reviewing court must modify the customary standard of review set as forth in Tenn. R. App. P. 13(d). As to the trial court's findings of fact, our review is ***de novo*** with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). We must then determine whether the facts, as found by the trial court or as supported by the preponderance of the evidence, clearly and convincingly establish the elements necessary to terminate parental rights. ***Jones v. Garrett***, 92 S.W.3d 835, 838 (Tenn. 2002). When the resolution of an issue in a case depends upon the truthfulness of witnesses, the trial judge who has had the opportunity to observe the witnesses and their manner and demeanor while testifying is in a far better position than this Court to decide those issues. ***See McCaleb v. Saturn Corp.***, 910 S.W.2d 412, 415 (Tenn. 1995); ***Whitaker v. Whitaker***, 957 S.W.2d 834, 837 (Tenn. Ct. App. 1997). The weight, faith, and credit to be given to any witness' testimony lies in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court. ***See id.***; ***see also Walton v. Young***, 950 S.W.2d 956, 959 (Tenn. 1997).

### Required Findings

Father first contends that the trial court did not make the required statutory findings. Tennessee Code Annotated § 36-1-113(k) provides, in pertinent part, that: "The court shall enter an order that makes specific findings of fact and conclusions of law within thirty (30) days of the conclusion of the hearing." This requirement reflects the legislature's understanding of the "necessity of individualized decisions in these cases," and "that the findings of fact and conclusions of law facilitate appellate review and promote the just and speedy resolution of appeals." ***In re Muir***, No. M2002-02963-COA-R3-CV, 2003 Tenn. App. LEXIS 831, *8-9 (Tenn. Ct. App. 2003).

-4-

Father submits that the trial court did not make the required findings – that the state had established the statutory grounds and that termination was in the best interest of the children by clear and convincing evidence – when the trial court ruled from the bench. This Court has previously addressed this same argument in *In re. B.L.R.*, No. W2004-02636-COA-R3-PT, 2005 WL 1842502 (Tenn. Ct. App. 2005). As stated in *B.L.R.* "when this Court undertakes a review of a parental termination case, we are concerned with whether the trial court's final written order, not its oral statements to the parties, satisfies the statute." *Id.* at \*33(citations omitted). This is because of the well established principle "that a court speaks only through its written judgments, duly entered upon its minutes." *Id.* at \*32 (citing *Green v. Moore,* 101 S.W.3d 415, 420 (Tenn. 2003); *Evans v. Perkey*, 647 S.W.3d 636, 641 (Tenn. Ct. App. 1982)).

Father's next contention, however, is that the trial court's written order is insufficient. After reviewing the final order, we disagree. The order explicitly states that the trial court's findings were by clear and convincing evidence. In the final order the trial court stated that it found that pursuant to Tenn. Code Ann. §§36-1-113(g)(2) and 37-2-403(a)(2), Father had failed to substantially comply with the "reasonable responsibilities set out in the foster care plans related to remedying the conditions which necessitate foster care placement." In support of this conclusion, the trial court found that Father had failed to avoid alcohol and drug issues, maintain stable housing, and obtain individual counseling. Additionally, the trial court found that Father had "not remedied the conditions that led to removal or other conditions persist pursuant to T.C.A. §36-1-113(g)(3)." The trial court found that the children had been removed for a period of six months and the conditions leading to removal still persist, including unstable home conditions and abuse of drugs or alcohol. The trial court found that these conditions would cause the children to be subjected to further abuse and neglect and there is little likelihood that the conditions will be remedied at an early date. The trial court made credibility findings, finding Father to be credible, and that he had admitted to using drugs over the July 4, 2009 holiday, the same month as the termination proceedings and after his drug rehabilitation. The trial court found that Father's two week stay in drug rehabilitation did not address his issues with drugs. The trial court found that Father had not provided the children a suitable home. Finally, the trial court, in its order, found that termination of Father's parental rights was in the best interest of the children. In support of this conclusion, the trial court stated that it found that Father loved his children, but "had not taken advantage of the help offered by DCS to regain custody." The trial court stated that delaying permanency for these children in order to allow Father to get treatment would not be fair to the children. The trial court found that Father was not truthful during his mental health intake, causing delay in getting services. The trial court found that the children need a home, are in a loving home, and have bonded with their foster parents. Based on these findings, we find that the trial court's final order satisfies the statutory requirements.

## Grounds for Termination

The trial court terminated Father's parental rights to the children on two statutory grounds: substantial noncompliance with permanency plans pursuant to Tenn. Code Ann. §§36-1-113(g)(2) and 37-2-403(a), and persistence of conditions pursuant to Tenn. Code Ann. § 36-1-113(g)(3). We will review the record to determine if DCS established at least one of these grounds by clear and convincing evidence. Tenn. Code Ann. § 36-1-113(c); *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002).

### *Substantial Non-Compliance*

Parental rights may be terminated under the statute when:

> There has been substantial noncompliance by the parent or guardian with the statement of responsibilities in a permanency plan or a plan of care pursuant to the provisions of title 37, chapter 2, part 4.

Tenn. Code Ann. § 36-1-113(g)(2). As this Court has previously explained:

> Terminating parental rights based on Tenn. Code Ann. § 36-1-113(g)(2) requires more proof than that a parent has not complied with every jot and tittle of the permanency plan. To succeed under Tenn. Code Ann. § 36-1-113(g)(2), [DCS] must demonstrate first that the requirements of the permanency plan are reasonable and related to the conditions that caused the child to be removed from the parent's custody in the first place, *In re Valentine,* 79 S.W.3d [539,] 547; *In re L.J.C.*, 124 S.W.3d 609, 621 (Tenn. Ct. App. 2003), and second that the parent's noncompliance is substantial in light of the degree of noncompliance and the importance of the particular requirement that has not been met. *In re Valentine*, 79 S.W.3d at 548-49; *In re Z.J.S.,* 2003 WL 21266854, at *12. Trivial, minor, or technical deviations from a permanency plan's

requirements will not be deemed to amount to substantial noncompliance. *In re Valentine,* 79 S.W.3d at 548; *Department of Children's Servs. v. C.L.,* No. M2001-02729-COA-R3-JV, 2003 WL 22037399, at *18 (Tenn. Ct. App. Aug. 29, 2003)(no Tenn. R. App. P. 11 application filed.)

*In re M.J.B.*, 140 S.W.3d 643, 656-57 (Tenn. Ct. App. 2004). Additionally, DCS must make reasonable efforts to assist the parent in meeting the requirements of the plan. *See In re D.D.V., M2001- 02282-COA-R3-JV*, 2002 WL 225891 (Tenn. Ct. App. 2002).

Father submits on appeal that the requirements were not reasonable nor related to remedying the conditions that led to removal, that DCS did not make reasonable efforts to assist him in meeting the requirements, and that despite this, he substantially complied with the requirements. We will first address father's assertion that the requirements were not reasonable or related. "Conditions necessitating foster care placement may include conditions related both to the child's removal and to family reunification." *In re Valentine,* 79 S.W.3d 539, (Tenn. 2002).

After reviewing the record, we find that the requirements under the permanency plans were reasonable and related to the children's removal and family reunification. Under the permanency plans, Father had to participate in a mental health intake and a parenting assessment and classes, complete an alcohol and drug assessment, participate in individual counseling, submit to a hair follicle drug test, obtain stable housing, and participate in visitation with the children. The record demonstrates that Father had an ongoing alcohol and drug problem. He was discharged from the military for failing alcohol rehabilitation, he tested positive for marijuana use during the pendency of this case, and openly admitted to using drugs. Further, the record shows that father had anger issues and needed counseling to address these issues. Both his mental health intake and his alcohol and drug assessment recommended individual counseling. Also, Father had not lived with or had custody of the children since 2003, other than a few months when he lived with the grandparents who had custody. We find that the evidence in the record clearly and convincingly establishes that the requirements were reasonable and related to the children's removal and family reunification.

Father next contends that DCS did not make reasonable efforts to assist him in meeting the requirements of the permanency plan. We find this contention to be without merit. Upon review of the record, we find that DCS made numerous attempts to assist Father in meeting the requirements of the permanency plans. A DCS family service worker testified that she requested parenting assessments, alcohol and drug classes, mental health intakes,

supervised visitation, and transportation for the children. She further testified that DCS provided Father with three gas cards in the amount of twenty-five dollars each to assist Father with traveling. DCS made several attempts to set up a hair follicle drug test, even rescheduling one for ninety-five days later when Father admitted he would test positive. When Father told DCS, he could not afford individual counseling, DCS sent him information about free counseling via certified mail. Upon Father's assertion that he did not pick up certified mail, DCS sent the information on free counseling to another DCS office located closer to Father so it would be more convenient for Father to pick up the information. In a further attempt to provide individual counseling, DCS offered to pay for the initial intake at a counseling facility when Father signed a release. From our review of the record, we find by clear and convincing evidence that DCS made reasonable efforts to assist Father in meeting the requirements of the permanency plan.

Finally, Father contends that the evidence does not support the trial court's finding by clear and convincing evidence that Father failed to substantially comply with the requirements of the permanency plan. We also find this contention to be without merit. Father was required to complete a mental health intake, parenting education, an alcohol and drug assessment, individual counseling, successfully complete probation and incur no new criminal charges, obtain stable housing and participate in visitation. Father did complete a mental health intake, but admittedly was not truthful about his alcohol and drug use. Father completed one parenting assessment. However, this assessment showed a high risk of physical abuse and therefore recommended individual counseling, parenting education and another assessment. These recommendations were added to the permanency plans, but Father did not complete them. Father never obtained individual counseling. It is arguable whether Father ever obtained stable housing. He moved at least five times during the two year span of this case, and lived with at least two different girlfriends during this time. However, at the time of the trial he had been in the same house for six months with a girlfriend. Because DCS admitted at trial that stable housing would mean staying in the same home for at least six months, we will assume for purposes of this opinion that Father met the stable housing requirement. Father never submitted a clean hair follicle drug test. He actually submitted to one hair follicle drug test, which came back positive for marijuana. Father was to later submit to another hair follicle drug test but informed DCS he would not because it would come back positive. When informed that the hair follicle drug test went back ninety-days Father stated that he would take another test in ninety-five days. DCS set up another hair follicle drug test but Father did not show up and explained at trial that he "had something to do that day." Moreover, Father admitted to using marijuana just weeks prior to the trial and after he attended drug rehabilitation. Accordingly, we find that DCS established by clear and convincing evidence that Father failed to substantially comply with the permanency plans.

*Persistence of Conditions*

Termination of parental rights is also provided for in Tenn. Code Ann. § 36-1-113(g)(3) which states:

> (3) The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and:
>
> (A) The conditions that led to the child's removal or other conditions that in all reasonable probability would cause the child to be subjected to further abuse or neglect and that, therefore, prevent the child's safe return to the care of the parent(s) or guardian(s), still persist;
> (B) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent(s) or guardian(s) in the near future; and
> (C) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home;

In *In re Audrey S.*, 182 S.W.3d 838 (Tenn. Ct. App.2005), this Court held that, "based upon the statutory text and its historical development, Tenn. Code Ann. § 36-1-113(g)(3) [ground of persistence of conditions] applies as a ground for termination of parental rights only where the prior court order removing the child from the parent's home was based on a judicial finding of dependency, neglect, or abuse." In the case before us, the children were adjudicated dependent and neglected. DCS filed a petition to declare the children dependent and neglected on May 1, 2007, alleging, that Father was unfit to care for the children, on probation for solicitation to commit aggravated robbery, that he has anger issues, that Father did not cooperate with DCS and work on the permanency plan when the children were previously in custody, and that he is not an appropriate placement for the children. On July 20, 2007, Father waived his right to an adjudicatory hearing and the trial court entered an order on August 20, 2007 finding the children dependent and neglected by clear and convincing evidence.

From our review of the record, it appears that at the time of the hearing to terminate Father's parental rights, the majority of the conditions which supported the finding of dependency and neglect had not been remedied. Father did remedy one of the conditions. During the pendency of these proceedings, Father successfully completed probation and did not incur any additional criminal charges.

The remaining conditions, however, had yet to be remedied. As stated in the petition for dependency and neglect, Father has anger issues. From our review of the record, Father has not resolved those issues. It was suggested at both his mental health intake and his parenting assessment, that Father obtain individual counseling. Because of this suggestion, individual counseling was added as a requirement under the permanency plans. Despite the requirement and the efforts of DCS to assist him in obtaining counseling, Father has not attended any counseling sessions. Further, Father has demonstrated his anger issues when dealing with DCS employees. As one social worker testified, she was instructed by her supervisors to quit meeting as often with Father as they did not feel it was safe, and she agreed with their assessment. Also, the same social worker testified that at a meeting in June 2009, Father became angry and began yelling and screaming at her.

Additionally, under the dependency and neglect petition, Father was found not to be an appropriate placement due to his previous unwillingness to cooperate with DCS and complete the requirements of previous permanency plans. As discussed above, Father has maintained this pattern of conduct by refusing to cooperate with DCS. Father stated he would only complete the permanency plans if court ordered. Despite the plans being approved by the court, Father still failed to substantially comply with the requirements of the plans. Also, Father failed to insure that DCS was able to contact him by providing DCS with his current contact information, further indicating a lack of cooperation.

Finally, Father has failed to establish a suitable home for the children. The evidence shows that while Father has lived in the same home for six months, he moved at least five times in the two years of these proceedings, and has lived with two different women. Further, Father has failed to remedy his drug problem, making his home unsuitable. Father refused on numerous times to submit to a hair follicle drug test, admitting that it would come back positive. He did submit to one hair follicle drug test, which came back positive for marijuana. At trial, Father admitted to the court that he used marijuana around July 4, 2009, just weeks before the termination hearing and after his two week stay at a drug rehabilitation facility. While Father in his brief states that "[i]n the society of today and the real world worth and importance of 'smoking a joint' surely cannot be deemed substantial," this court cannot lightly brush aside the use of illegal drugs. This is especially so when one knows that by using these substances, one is risking termination of his parental rights. From the record as a whole, we conclude that there is clear and convincing evidence to support the trial court's finding that the conditions that led to the removal of the children, more than two years prior to the hearing, had not been sufficiently remedied so that the children might be returned to Father and that the conditions will likely not be remedied at an early date.

**Best Interests**

Before a court in this State can terminate a biological parent's parental rights, it must find that doing so is in the best interest of the child. *See* Tenn. Code Ann. § 36-1-113(c)(2). Tennessee Code Annotated § 36-1-113(I) provides a list of factors the trial court is to consider when determining if termination is in the child's best interest. The trial court is not limited to theses factors. Tenn. Code Ann. § 36-1-113(I). The best interests of a child must be determined from the child's perspective and not the parents. ***White v. Moody,*** 171 S.W.3d 187, 194 (Tenn. Ct. App. 2004).

Father submits that termination of his parental rights was not in the best interests of his children. We have reviewed the record and find that several factors weigh in favor of termination. Father has failed to make an adjustment of circumstance, conduct, or conditions as to make it safe for the children to be in his home. Father has failed to effect a lasting adjustment despite the reasonable efforts of DCS. Specifically, Father has failed to adjust his lifestyle in order to regain custody of the children. He has been basically itinerate for the past two years. Despite admonishment from DCS and attending drug rehabilitation, Father has been unable and unwilling to remain drug free or even admit that he has a problem. Father has not completed individual counseling or parenting education. These facts indicate a lack of desire or willingness on the part of Father to make any sort of adjustment. Because there has been basically no adjustment in Father's lifestyle, it does not appear possible any lasting adjustment will be made. While Father has had visitation, Father has not had custody of the children since 2003. The children have been in the same foster home since 2006, except for a ninety day trial home visit with Mother and then two days subsequent to the trial visit. Prior to that the children have been in and out of state custody, in both Tennessee and Texas, since 2003. Father has not lived with the children since 2003, except for a brief period of time while he lived with the grandparents. Father has anger issues which he has refused to address by attending individual counseling. Also, Father has been found to be at risk for physical abuse.

Moreover, the record shows that the children are doing well. The children have been living with the same foster family since 2006, except for a three month period when they were living with Mother. A professional counselor testified that the children need stability. The children have adjusted to their current home and have bonded with their foster parents. Mother expressed that in her opinion it was best that both parents' parental rights be terminated so that the foster parents could adopt the children. All three children have expressed the desire to be adopted by their foster parents. Currently, the children are in a stable, loving home. They are involved with church, school and other extracurricular activities. They are all progressing as they should in school, despite being behind in some areas when they were first placed in the foster care. Consequently, we find the record shows by clear and convincing evidence that termination of Father's parental rights is in the best interests of the children.

## Conclusion

For the reasons stated, we affirm the trial court's termination of Father's parental rights. Costs of this appeal are taxed to the Appellant, Brian A, and his surety.

_____
J. STEVEN STAFFORD, JUDGE