IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 13, 2010 Session

## BEVERLY ANGEL v. DIANE NIXON

**Appeal from the Circuit Court for Smith County**
**No. 6774-B      Clara Byrd, Judge**

**No. M2010-00554-COA-R3-CV - Filed November 8, 2010**

The paternal grandmother of a three-year-old child filed a petition seeking visitation pursuant to Tenn. Code Ann. § 36-6-306. The grandmother contended that the child's mother prevented the grandmother from seeing the child following the death of the child's father. Grandmother also contended that she had a significant existing relationship with the child and that the loss of this relationship was likely to cause severe emotional harm to the child. The trial court granted the petition and awarded the grandmother three hours of visitation every third Sunday at the grandmother's home. The mother appealed, arguing that the trial court erred in making the award to the grandmother, because the mother did not oppose visitation. Alternatively, she argued that the proof did not support a finding that the grandmother had a significant existing relationship with the child or that the child would be severely emotionally harmed from severance of that relationship. We affirm the trial court's determination that the grandmother is entitled to three hours of visitation every third Sunday.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., M.S., and RICHARD H. DINKINS, J., joined.

Amanda G. Crowell, Lebanon, Tennessee, for the appellant, Diane Nixon.

J. Branden Bellar, Carthage, Tennessee, for the appellee, Beverly Angel.

### OPINION

The child who is the subject of this action was born on March 14, 2005 to Travis Nixon ("Father") and Diane Nixon ("Mother"). Father and Mother had been married for twelve years when Father died unexpectedly on August 12, 2008. The child was three years old when Father died. The petitioner, Beverly Angel ("Grandmother") is Travis Nixon's

mother and, thus, the child's paternal grandmother. The parties and their extended families reside in Smith County, Tennessee.

Prior to Father's death, the child grew up having considerable contact with Father's extended family. Father's family is very close-knit, and Grandmother hosted weekly family gatherings in her home, which Father regularly attended with the child. The child referred to Grandmother as "Mimi." Father and Mother lived on Grandmother's property for a period of several years, and shared a cell phone plan with Grandmother. The child's aunt, Grandmother's daughter, frequently babysat the child during the summer months while Mother and Father worked. The child also enjoyed spending time with his paternal cousins.

Mother never had a close relationship with anyone in Father's family; she rarely attended any of Father's family functions, and Grandmother seldom visited Mother and Father at their home. When Father spent time with his family, it was almost always without Mother.

Following Father's death in August 2008, Mother and Grandmother were both understandably distraught and the relationship between them became strained. Mother and the child began staying with Mother's relatives, first with her aunt and uncle, and then with her sister and brother-in-law. The relationship became openly hostile when Grandmother and Grandmother's daughter sued Mother in the Smith County Circuit Court for the return of several items of Father's personal property.

Mother and Grandmother communicated over the phone occasionally, but Grandmother did not see the child. Mother claims she offered to let Grandmother visit the child, but insisted that Grandmother come to wherever Mother was staying. It became clear that neither party felt comfortable interacting with the other; however, one afternoon, Mother noticed Grandmother's car at a local grocery store and stopped by with the child so Grandmother could see him briefly.

On October 21, 2008, Grandmother filed a Petition for Grandparent Visitation in the Circuit Court for Smith County, Tennessee. She alleged that she had a significant existing relationship with the child and that Mother prevented her from seeing the child. She also alleged that the severance of that relationship by Mother would cause severe emotional harm to the child. Mother answered, denying that she opposed visitation with Grandmother and denying that Grandmother had a significant existing relationship with the child or that the child would be severely emotionally harmed from the cessation of that relationship. Mother also requested that Grandmother cease all contact with Mother, or Mother would seek a restraining order. The court then appointed a guardian ad litem for the child at Grandmother's request.

During the pendency of the proceedings, Mother permitted Grandmother to have restricted and supervised visitation with the child on three occasions, on June 26, July 2, and August 31, 2009. Visitation was limited to thirty minutes per visit and it occurred at Mother's home under the supervision of Mother or her relatives. Visitation was also limited to Grandmother; none of Father's other relatives were permitted to visit the child.

On October 29, 2009, Mother filed a motion to dismiss Grandmother's visitation petition asserting that the three visits illustrated that she did not oppose visitation with Grandmother; therefore, Grandmother was not entitled to a hearing. There is no record of the motion being heard prior to trial. The trial was held on November 17 and 18, 2009. Relatives on both sides of the family testified, as well as Mother, Grandmother and the guardian ad litem.

The trial court made detailed and specific findings of fact. Specifically, the court found that Mother was "absolutely untruthful" in her assertions that she did not oppose Grandmother's visitation, and that "by her actions, she has shown numerous attempts to frustrate any contact between [the] child and the family." The court found that the child had frequently visited with Grandmother and Father's family prior to Father's death, that a significant relationship existed with Grandmother and Father's extended family, and that the severance of that relationship would cause the child severe emotional harm in the form of the loss of knowledge of his heritage and feelings of abandonment and resentment. The court reasoned that although Mother clearly loved and cared for the child, her resentment and anger at Father's family was likely to have a negative impact on the child. The court granted Grandmother three hours of visitation on every third Sunday, and directed that Grandmother or Grandmother's daughter be allowed to pick the child up and take him to Grandmother's house. Mother filed a timely appeal.

Mother presents several issues for review, each challenging the trial court's findings. Mother contends that the trial court erred in finding: 1) that Mother opposed visitation by Grandmother; 2) that Grandmother had a significant existing relationship with the child, and; 3) that the loss of the child's relationship with Grandmother would occasion severe emotional harm to the child.[1]

---

[1]Grandmother urged the court to retroactively apply a recent amendment to Tenn. Code Ann. § 36-6-306(b)(4), effective May 26, 2010. The amendment, a new subsection, states, "(4) For the purposes of this section, if the child's parent is deceased, and the grandparent seeking visitation is the parent of that deceased parent, there shall be a rebuttable presumption of substantial harm to the child based upon the cessation of the relationship between the child and grandparent." The amendment became effective after the judgment was entered in this action. For this reason, we did not consider the presumption.

## STANDARD OF REVIEW

The standard of review of a trial court's findings of fact is de novo, and we presume that the findings of fact are correct unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 296 (Tenn. Ct. App. 2001). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *Rawlings*, 78 S.W.3d at 296; *see also Realty Shop, Inc. v. R.R. Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999). Where the trial court does not make findings of fact, there is no presumption of correctness and "we must conduct our own independent review of the record to determine where the preponderance of the evidence lies." *Brooks v. Brooks*, 992 S.W.2d 403, 405 (Tenn. 1999). We also give great weight to a trial court's determinations of credibility of witnesses. *Estate of Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997); *B & G Constr., Inc. v. Polk*, 37 S.W.3d 462, 465 (Tenn. Ct. App. 2000). Issues of law are reviewed de novo with no presumption of correctness. *Nelson v. Wal-Mart Stores, Inc.*, 8 S.W.3d 625, 628 (Tenn. 1999).

## ANALYSIS

Parents have superior rights over all others to direct the upbringing of their children, including decisions regarding with whom the child interacts, *Hawk v. Hawk*, 855 S.W.2d 573, 577-78 (Tenn. 1993). The foregoing notwithstanding, Tenn. Code Ann. § 36-6-306(a) identifies certain circumstances in which grandparents are entitled to court-ordered visitation with a minor grandchild. One such circumstance is when a parent of the minor child is deceased and the surviving parent "opposes" visitation by a grandparent. Tenn. Code Ann. § 36-6-306(a)(1).

### I.

Mother contends the trial court erred in not dismissing Grandmother's petition because she did not oppose visitation by Grandmother; instead, she merely opposed the times and places Grandmother requested. *See* Tenn. Code Ann. § 36-6-306(a); *see also Huls v. Alford*, No. M2008-00408-COA-R3-CV, 2008 WL 4682219, at *8 (Tenn. Ct. App. Oct. 22, 2008). A parent opposes visitation, in the context of this action, when "visitation is denied totally and when visitation is technically not opposed, but where the frequency and/or conditions imposed by the parents on the visitation are such that it equates to a denial of visitation."[2] *Huls*, 2008 WL 4682219, at *8.

---

[2]However, the grandparent visitation statute "cannot not be used by grandparents who think they are
(continued...)

The trial court made specific findings of fact concerning Mother's opposition to Grandmother's visitation. The trial court found Mother's claim that she did not oppose visitation was "absolutely untruthful." The court also found that Mother "has shown numerous attempts to frustrate any contact between this child and [Father's] family." The court based these findings on the uncontroverted facts that Grandmother only visited the child one time – in the parking lot of a grocery store – in the time between Father's death and the filing of this petition, and that Mother notified Grandmother to cease all contact with Mother or face a restraining order.

There is also ample proof to support the trial court's finding that the three 30-minute visits during the summer of 2009 were so limited and uncomfortable that they amounted to a technical denial. *See Huls*, 2008 WL 4682219, at *8. This finding is supported by numerous facts. In the first visit, Grandmother was not allowed to play with the child without supervision by members of Mother's family. In another visit, Grandmother was not permitted to interact with the child for most of the first visit because he was playing video games. Mother also prohibited Grandmother from giving the child a gift she had brought for him, and on one occasion when Grandmother brought the child's thirteen-year-old cousin to visit, Mother refused to allow the cousin inside, and would only allow Grandmother to visit if the cousin waited in the car, which she did.

The foregoing facts fully support the trial court's finding that Mother opposed Grandmother's visitation. Therefore, Grandmother was entitled to a hearing on her petition for grandparent visitation.

II.

If the trial court determines, as the court did here, that a parent of the minor child is deceased and that the surviving parent opposed visitation by a grandparent, then the grandparent has the evidentiary burden to demonstrate that the minor child has or will experience substantial harm if grandparent visitation is not ordered.[3] Tenn. Code Ann. § 36-6-306(b); *Hawk v. Hawk*, 855 S.W.2d 574, 577 (Tenn. 1993). The harm to the child must be "a real hazard or danger that is not minor, trivial, or insignificant." *Ray v. Ray*, 83 S.W.3d 726, 732 (Tenn. Ct. App. 2001). It must be "sufficiently probable to prompt a reasonable

---

[2](...continued)
entitled to more or different visitation in the absence of a finding that the parents actually or effectively 'opposed' visitation." *Huls*, 2008 WL 4682219, at *8.

[3]A finding of harm is necessary before further inquiry is constitutionally permissible. *Hawk v. Hawk*, 855 S.W.2d 574, 577 (Tenn. 1993).

person to believe that the harm will occur more likely than not," but it "need not be inevitable." *Id.* Furthermore, the petitioner must prove harm to the specific child that is the subject of the suit, not children in general. *Ottinger v. Ottinger*, No. E2003-02893-COA-R3-CV, 2004 WL 1626253, at *5 (Tenn. Ct. App. July 21, 2004).

A finding of substantial harm may be based upon the cessation of the relationship between the minor child and grandparent if the court determines that:

> (A) The chid had such a significant existing relationship with the grandparent that loss of the relationship is likely to occasion severe emotional harm to the child;

> (B) The grandparent functioned as a primary caregiver such that cessation of the relationship could interrupt provision of the daily needs of the child and thus occasion physical or emotional harm; or

> (C)The child had a significant existing relationship with the grandparent and loss of the relationship presents the danger of other direct and substantial harm to the child.

Tenn. Code Ann. § 36-6-306(b)(1)(A)-(C).

The statutory scheme creates a presumption that a grandparent has "a significant existing relationship with a grandchild if . . . the grandparent had frequent visitation with the child . . . for a period of not less than one (1) year." Tenn. Code Ann. § 36-6-306(b)(2)(C). The statutory scheme also provides that expert testimony is not required to "establish a significant existing relationship with a grandchild or that the loss of the relationship is likely to occasion severe emotional harm to the child." Tenn. Code Ann. § 36-6-306(b)(3). The court need only "consider whether the facts of the particular case would lead a reasonable person to believe that there is a significant existing relationship . . . or that the loss of the relationship is likely to occasion severe emotional harm to the child." *Id.*

The trial court found that the child had a significant existing relationship with Grandmother because the child had frequent visitation with Grandmother for more than one year. *See* Tenn. Code Ann. § 36-6-306(b)(2)(C). Mother argues the evidence preponderates against the trial court's finding because the child was in day care for much of his life, and because the child did not always attend the Sunday family gatherings. However, the court based its finding on the testimony of seven witnesses, all of whom testified that they had observed a close relationship between the child and Grandmother, and that Grandmother hosted weekly family gatherings on Sundays, which Father almost always attended and

frequently brought the child. The record also reflects that Grandmother's daughter (Father's sister) babysat the child approximately five days a week in the summer of 2008, and during that time, Grandmother often visited the child. Although Mother testified that the child "barely knew" Grandmother, the court specifically noted, based on an evaluation of the demeanor of both parties, that Mother's testimony was not trustworthy.

The trial court also found that the loss of the relationship would be likely to cause severe emotional harm to the child. *See* Tenn. Code Ann. § 36-6-306(b)(1)(A). Mother argues that because the child is bright, well-adjusted, healthy and thriving at this point in his life, that Grandmother has failed to satisfy the statutory requirement. She also argues that Grandmother failed to present evidence that this particular child would suffer. The evidence reflects, and the court found, that although the child was generally healthy and happy, the separation from Grandmother for 10 months during the pendency of the litigation had already begun to have negative effects – the child referred to his grandmother as "mean," and did not "warm up to her" during the supervised visits in Summer 2009, while he previously had a warm and loving relationship with her. The court also found that a reasonable person would find it likely that the separation would cause severe emotional harm for the child in the future, creating feelings of abandonment and depriving him of his right to learn about his heritage and the people who love him and cared for him when he was young. Last, the court found that if the child, when he was older, decided to pursue a relationship with Grandmother, Mother's resentment and anger towards Father's family would force the child to be deceptive. Although these findings may also be true for children in general, the court clearly found them to be true for this particular child, meeting the requirement in *Ottinger*, 2004 WL 1626253, at *5.

The trial court found that Grandmother had a significant existing relationship with the child and that the loss of the relationship is likely to occasion severe emotional harm to the child. The evidence does not preponderate against these findings, therefore, we affirm these findings by the trial court.[4]

III.

Upon making the finding of substantial harm based upon the cessation of the relationship between the minor child and grandparent, the court is required to determine whether "grandparent visitation would be in the best interests of the child based upon the factors in § 36-6-307." Tenn. Code Ann. § 36-6-306(c).

---

[4]The cessation of this relationship constitutes "substantial harm" under Tenn. Code Ann. § 36-6-306(b)(1), which satisfies the constitutional prerequisite for inquiry into Mother's parenting choices. *See Hawk*, 855 S.W.2d at 577.

The trial court found it was in the best interest of the child to have visitation with Grandmother for three hours on every third Sunday. The trial court's decision was based on the findings that the child had existing emotional ties with Grandmother, Tenn. Code Ann. § 36-6-307(2), that Grandmother was willing to encourage a close relationship between the child and Mother, Tenn. Code Ann. § 36-6-307(4), and that Mother's anger and resentment toward Grandmother is likely to have a negative impact on the child. *Id.* Mother did not challenge this conclusion on appeal and the evidence does not preponderate against the trial court's finding that visitation was in the child's best interest. We, therefore, affirm the trial court's decision to award Grandmother three hours of visitation every third Sunday.

## IN CONCLUSION

The judgment of the trial court is affirmed and this matter is remanded with costs of appeal assessed against the appellant, Diane Nixon.

_____
FRANK G. CLEMENT, JR., JUDGE