# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
September 12, 2013 Session

## YENNY WALKER v. JANEK PAWLIK

**Appeal from the Circuit Court for Davidson County**
**No. 13D341      Phillip Robinson, Judge**

---

**No. M2013-00861-COA-R3-CV - Filed October 23, 2013**

---

This appeal arises from the granting of an order of protection. Yenny Walker ("Walker") dated Janek Pawlik ("Pawlik"). Walker broke off the relationship and later filed a petition for an order of protection against Pawlik. The general sessions court entered an order of protection. Pawlik appealed to the Circuit Court for Davidson County ("the Trial Court"). After a hearing, the Trial Court granted Walker an order of protection against Pawlik based on a finding of stalking. Pawlik appeals, arguing that the evidence preponderates against the Trial Court's finding that he was stalking Walker. After reviewing the record, we find that the evidence does not preponderate against the Trial Court's finding of stalking. Also, in keeping with Tenn. Code Ann. § 36-3-617 and relevant case law, we remand for the Trial Court to determine and award to Walker her reasonable attorney's fees and costs incurred in defending this appeal. We affirm the Trial Court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed;**
**Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which JOHN W. MCCLARTY and THOMAS R. FRIERSON, II, JJ., joined.

Michael T. Fort, Franklin, Tennessee, for the appellant, Janek Pawlik.

Audrey Dorrough Seamon, Nashville, Tennessee, for the appellee, Yenny Walker.

# OPINION

## Background

On September 18, 2012, Walker filed a petition for an order of protection against Pawlik in the General Sessions Court of Davidson County. Walker's petition alleged that Pawlik had stalked her. On January 17, 2013, the General Sessions Court granted Walker's petition. Pawlik appealed to the Trial Court. On March 4, 2013, the Trial Court held a hearing on this matter.

Walker and Pawlik were the only witnesses to testify. Walker testified first. Walker met Pawlik via the dating website Match.com in either March or May of 2012. The parties dated for a few months. In August 2012, Walker went on a vacation to Aruba. Before going on the trip, Walker gave her house and car keys to a neighbor. Walker asked Pawlik to retrieve them from the neighbor because the neighbor was going to be away. On August 12, 2012, Pawlik was supposed to pick up Walker and her young daughter at the airport. Walker, however, was unable to communicate with Pawlik beforehand to confirm that he could pick them up and so she had another male friend come to the airport instead. When Walker arrived at the airport, Pawlik was there. According to Walker, Pawlik was infuriated that she had someone else come to pick her up. Walker testified that Pawlik grabbed and threw her suitcase and insisted that she go with him. Walker stated that Pawlik did not want to hand over her house and car keys. Ultimately, Walker and her daughter rode home with Walker's other male friend. Later, Pawlik called, emailed, and text messaged Walker. Pawlik sent Walker an email that night. Walker stated that this email made her feel "[v]ery uncomfortable and very nervous."

On August 18, 2012, Pawlik insisted that Walker have lunch with him so that he could apologize. After lunch, Walker, her daughter, and Pawlik went to the Apple store at the mall. Nothing was bought. Afterwards, Walker started to leave to go see a movie with her daughter. Walker testified that Pawlik began screaming and shouting at her. Walker testified that she was scared by this behavior. At this point, Walker told Pawlik to leave her alone.

Later on the night of August 18, after the mall incident, Pawlik appeared at Walker's home uninvited and knocked on her door. Walker told Pawlik through a window that it was too late for visitors and that she was putting her child to bed. Walker testified that Pawlik stayed outside for hours. When Walker checked outside to see if Pawlik was gone, Pawlik tried to gain entry into the house. The next morning, Walker found an iPad outside her door. Walker later took the iPad back to the store and received credit for it.

Following the events of August 18, Pawlik continued to text and email Walker. On August 19, Pawlik sent Walker an email stating in part: "I really am [f–king] crazy and unstable looking to you. Boy, I must scare you to death. I won't stalk or wish anymore …." At some point in August 2012, Pawlik sent Walker flowers and a note. The note stated: "I know I shouldn't be doing this because it may make you feel uncomfortable and I know you said bye. But I saw these and thought of you. Please have good memories of me." Pawlik sent more flowers and another note to Walker. This note read: "Dear Yenny, I wanted you to know that the 'good Janek' loved doing nice things for you. Happy Labor Day to you and [your daughter]. Sincerely, 'Good Janek.' PS, 'Good Janek' will make sure that 'Bad Janek' doesn't stalk." On September 8, 2012, in response to an email from Pawlik, Walker sent the following in an email: "Please stop emailing me your thoughts … please find someone else …." Notwithstanding this reply, Pawlik sent another email a few hours later. Additionally, different entities, including a hospital, called Walker asking for Pawlik.

On September 14, 2012, Pawlik showed up again at Walker's home. Walker stated that she told him she did not have anything to say to him. Eventually, Pawlik tried to open the door himself. Walker called the police, who then arrested Pawlik. Walker testified that she feared for her safety as a result of Pawlik's behavior. On September 18, 2012, Walker filed her petition for an order of protection.

On cross-examination, Walker was asked about her continuing communications with Pawlik after her August 18, 2012 declaration that he was to leave her alone. Walker was questioned about a number of text messages that she sent Pawlik. Walker did not deny sending text messages, but simply could not remember exactly how many or the content. Walker forwarded an email to Pawlik on September 25, 2012. The specific content of the text messages was not made available at trial, and Walker could not remember the text messages with particularity.

Pawlik testified. Pawlik had different interpretations of several of the events Walker described. According to Pawlik, he never yelled at Walker in the mall. Regarding the night of the iPad delivery, he stated that he waited outside Walker's door for about 15 minutes and that Walker accepted the iPad. On the matter of unwanted contact, Pawlik testified that Walker actually wanted to discuss her pending divorce with him. With respect to references of stalking in his emails, Pawlik testified that this stemmed from an inside joke between the two. Pawlik stated that he never intended to stalk Walker.

At the end of the hearing, the Trial Court found stalking within the definition of the statute, and granted Walker's petition. Pawlik timely appealed to this Court.

**Discussion**

Though not stated exactly as such, Pawlik raises one issue on appeal: whether the evidence preponderates against the Trial Court's findings that he stalked Walker such that there was a basis for entering an order of protection pursuant to Tenn. Code Ann. § 36-3-601 *et seq*. Walker, for her part, requests her attorney's fees and costs incurred in defending this appeal.

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001). "In order for the evidence to preponderate against the trial court's findings of fact, the evidence must support another finding of fact with greater convincing effect." *Wood v. Starko*, 197 S.W.3d 255, 257 (Tenn. Ct. App. 2006). Regarding witness credibility and the weight to be given testimony, our Supreme Court has instructed:

> When credibility and weight to be given testimony are involved, considerable deference must be afforded to the trial court when the trial judge had the opportunity to observe the witnesses' demeanor and to hear in-court testimony. *Estate of Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997) (quoting *Randolph v. Randolph*, 937 S.W.2d 815, 819 (Tenn. 1996)). Because trial courts are able to observe the witnesses, assess their demeanor, and evaluate other indicators of credibility, an assessment of credibility will not be overturned on appeal absent clear and convincing evidence to the contrary. *Wells v. Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999).

*Hughes v. Metro. Gov't of Nashville and Davidson County*, 340 S.W.3d 352, 360 (Tenn. 2011).

We first address whether the evidence preponderates against the Trial Court's finding that Pawlik stalked Walker such that there was a basis for entering an order of protection pursuant to Tenn. Code Ann. § 36-3-601 *et seq*. A petitioner seeking an order of protection must prove, by a preponderance of the evidence, an allegation of domestic abuse, stalking, or sexual assault. Tenn. Code Ann. § 36-3-605 (b) (2010).

Stalking is the relevant allegation for this appeal. A 'stalking victim' is defined as "any person, regardless of the relationship with the perpetrator, who has been subjected to, threatened with, or placed in fear of the offense of stalking, as defined in § 39-17-315."

-4-

Tenn. Code Ann. § 36-3-601 (11) (2010) Stalking is defined by Tenn. Code Ann. § 39-17-315 (a)(4) (Supp. 2013) as: "[A] willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested, and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested." 'Course of conduct' is defined by Tenn. Code Ann. § 39-17-315 (a)(1) (Supp. 2013) as "a pattern of conduct composed of a series of two (2) or more separate noncontinuous acts evidencing a continuity of purpose." Harassment is defined by Tenn. Code Ann. § 39-17-315 (a)(3) (Supp. 2013) as: "[C]onduct directed toward a victim that includes, but is not limited to, repeated or continuing unconsented contact that would cause a reasonable person to suffer emotional distress, and that actually causes the victim to suffer emotional distress. Harassment does not include constitutionally protected activity or conduct that serves a legitimate purpose." Unconsented contact is defined as:

 [A]ny contact with another person that is initiated or continued without that person's consent, or in disregard of that person's expressed desire that the contact be avoided or discontinued. Unconsented contact includes, but is not limited to, any of the following:

(A) Following or appearing within the sight of that person;
(B) Approaching or confronting that person in a public place or on private property;
(C) Appearing at that person's workplace or residence;
(D) Entering onto or remaining on property owned, leased, or occupied by that person;
(E) Contacting that person by telephone;
(F) Sending mail or electronic communications to that person; or
(G) Placing an object on, or delivering an object to, property owned, leased, or occupied by that person;

Tenn. Code Ann. § 39-17-315 (a)(5) (Supp. 2013).

Pawlik's argument on appeal is rooted primarily in the communications Walker had with him following the date she demanded he leave her alone. Pawlik contends that such behavior is inconsistent with the definition of stalking. The record does reflect that Walker had further communications with Pawlik after August 18, 2012, the date of the mall incident when Walker told Pawlik to leave her alone. We, however, do not have the content of the text messages available to review. We do not know, for instance, whether Walker stated, "stop talking to me." On the other hand, from the messages and emails entered into the

record, we do find evidence of Walker having sought to terminate her relationship with Pawlik.

Walker and Pawlik clearly have significant differences in their versions of what transpired in this case. However, the Trial Court heard the testimony of the witnesses and implicitly found Walker's testimony credible. We see no reason to overturn the Trial Court's credibility determination. The record contains several instances of behavior by Pawlik to substantiate the allegation of stalking, including: his appearance at Walker's house on the night of August 18, 2012 with the iPad; additional emails; flowers with a note; and, the September 14, 2012 incident where Pawlik appeared again at Walker's house and again tried to enter the house.

We cannot assume from the fact that Walker continued communications of some unknown content with Pawlik that she withdrew her earlier demand that he leave her alone. There is a distinction to be had between replying to a communication and initiating a round of communications. Walker need not have been utterly silent in the face of Pawlik's repeated contacts to render his behavior stalking under the statute for purposes of seeking an order of protection. The evidence does not preponderate against the Trial Court's finding of stalking. We affirm the Trial Court as to this issue.

We next address Walker's request for an award of her attorney's fees and costs incurred in defending this appeal. Tenn. Code Ann. § 36-3-617 (a)(1) (Supp. 2013) provides:

> Notwithstanding any other law to the contrary, no domestic abuse victim, stalking victim or sexual assault victim shall be required to bear the costs, including any court costs, filing fees, litigation taxes or any other costs associated with the filing, issuance, registration, service, dismissal or nonsuit, appeal or enforcement of an ex parte order of protection, order of protection, or a petition for either such order, whether issued inside or outside the state. If the court, after the hearing on the petition, issues or extends an order of protection, all court costs, filing fees, litigation taxes and attorney fees shall be assessed against the respondent.

In keeping with Tenn. Code Ann. § 36-3-617 and relevant precedent, this Court may grant an award of reasonable attorney's fees and costs incurred in defending the appeal of an issuance or extension of an order of protection. *See Rodgers v. Rodgers*, No. E2011-02190-COA-R3-CV, 2012 WL 3900791, at *13 (Tenn. Ct. App. Sept. 10, 2012), *no appl. perm. appeal filed*; *Wiser v. Wiser*, No. M2010-02222-COA-R3-CV, 2011 WL 4729870, at *4 (Tenn. Ct. App. Oct 7, 2011), *no appl. perm. appeal filed*; *Land v. Casteel*, No. E2010-00593-COA-R3-CV, 2011 WL 808784, at *3 (Tenn. Ct. App. Mar. 8, 2011), *no appl.*

*perm. appeal filed*; *Brown v. Vaughn*, No. E2010-00373-COA-R3-CV, 2010 WL 3767123, at *8 (Tenn. Ct. App. Sept. 28, 2010), *no appl. perm. appeal filed*. Given that the Trial Court issued an order of protection to Walker on a finding of "stalking," and, as we have upheld the Trial Court on that decision, we conclude that Walker is entitled to an award of her reasonable attorney's fees and costs incurred in defending this appeal. We affirm the judgment of the Trial Court and remand for the Trial Court to conduct a hearing to determine a reasonable award to Walker of her attorney's fees and costs generated by this appeal.

## Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below and enforcement of the Trial Court's order. On remand, the Trial Court is instructed to conduct a hearing to determine a reasonable award to Yenny Walker of her attorney's fees and costs incurred in defending this appeal. Costs on appeal are assessed against the Appellant, Janek Pawlik, and his surety, if any.

_____
D. MICHAEL SWINEY, JUDGE